**AVIS RENT–A–CAR SYSTEM, INC.,**
Appellant,

v.

**STANDARD MEAT COMPANY, a corporation, and Travelers Indemnity Company, a corporation, Appellees.**

No. 5942.

District of Columbia Court of Appeals.

Argued Oct. 13, 1971.

Decided March 6, 1972.

John C. Williams, Washington, D. C., for appellant.

William H. Seckinger, Washington, D. C., for appellees. Edward J. Lopata, Washington, D. C., was on the brief for appellees. Richard W. Boone, Washington, D. C., also entered an appearance for appellees.

Before KELLY, FICKLING and YEAGLEY, Associate Judges.

YEAGLEY, Associate Judge:

Appellant, Avis Rent-A-Car System, Inc., (Avis) brought this appeal questioning the trial court's application of res ipsa

loquitur to the facts of this case following a jury verdict awarding appellees $6,000.[1]

On March 4, 1968, a tractor trailer rig leased[2] by appellee Standard Meat Co. (Standard) from Avis struck the superstructure of a bridge in Newport News, Virginia. The driver of the rig, Charles Gordon, was employed by Standard at the time of the accident. Standard alleged that the cause of the accident was the sudden and unexplained flipping upward and forward of the cab of the tractor when the driver applied the brakes.

The jury was instructed both on the theory of possible negligence of Avis and on the doctrine of res ipsa loquitur. We do not know on which theory the verdict was based. After a verdict was returned in favor of Standard, Avis filed a motion for a judgment notwithstanding the verdict or, in the alternative, for a new trial on the grounds, *inter alia,* that the court erred in granting Standard's requested instruction on res ipsa loquitur. The trial judge denied the motion and Avis appealed raising four contentions of error. Since we find that the giving of an instruction on the doctrine of res ipsa loquitur was erroneous and reverse on that ground, we do not discuss the other claims of error raised on this appeal.

On the morning of March 4, between 8 and 9 a. m., Standard's driver picked up the tractor in question from Avis in Washington, D. C. He then proceeded about 1 mile to the Baltimore and Ohio Railroad yard where he hooked it up to a trailer loaded with meat belonging to his employer.

He delivered a part of the shipment to a customer in Smithfield, Virginia, approximately 150 miles from Washington. He testified that prior to unloading the meat, which took about 2 hours, he had left the truck for about 15 minutes to get something to eat.

After unloading the trailer he proceeded toward Norfolk, Virginia. However, while en route at approximately 6:15 p. m. Gordon collided with an overhead railroad bridge crossing in the city of Newport News, Virginia. He testified that somewhere between 150 and 200 feet from the bridge he saw a sign at the top of the bridge which read "clearance 12 feet",[3] but he admitted having told a police officer at the scene that "I didn't see the 12′ clearance sign until I was right on it." Gordon said that the accident occurred when the cab of the tractor tilted up and forward as he applied the brakes with the effect that he thereupon lost the use of his brakes and "the trailer hit the bridge." Apparently, there were no other witnesses to the accident.

■ Ordinarily the doctrine of res ipsa loquitur has no application unless it appears from the evidence that the cause of the accident is known; the instrumentality which caused the accident was under the management or control of the defendant, and the occurrence was of such a nature that in the ordinary course of things it would not happen so long as the one in possession used proper care. Powers v. Coates, D.C.App., 203 A.2d 425 (1964) and cases cited therein. Followed in Andrews v. Forness, D.C.App., 272 A.2d 672 (1971).

Although it was clear that Avis was no longer in control of the tractor at the time of the accident, the trial judge felt the doctrine of res ipsa loquitur could still be

1. The parties stipulated the amount of damages and, therefore, the sole question for the jury was the issue of liability.

2. The tractor had been leased to Standard by Avis under a "full maintenance" agreement whereby Avis furnished the tractor and all the maintenance and Standard furnished a qualified driver. The trailer was owned by the Baltimore and Ohio Railroad Company and leased by them to Avis.

3. Gordon testified that it was the general practice to stop at all bridges under 12 feet 6 inches to make sure the trailer would pass under the bridge.

used providing the jury found, and he so instructed them:

> . . . that the tractor after Mr. Gordon took possession of it was not mishandled, not subject to any unusual circumstances which altered its basic condition. . . . You have got to believe that the fault occurred before Mr. Gordon picked up the trailer, when the Defendant had exclusive possession of it and that nothing that Mr. Gordon did afterwards by way of mishandling the tractor itself, basically altering the condition of the tractor. Accordingly, you have got to believe that the accident was not due to any voluntary act or contribution on the part of Gordon which was the responsible cause of the accident.

■ This instruction, we believe, was erroneous. When the accident occurred the instrumentality which caused the damage was not only no longer in the possession or control of the defendant but was in complete and exclusive control of the plaintiff's driver and had been for some 9 or 10 hours prior thereto. *See, e. g.,* Willoughby v. Safeway Stores, 91 U.S.App.D. C. 168, 169, 198 F.2d 604, 605 (1952).

Standard contended and the court agreed, that notwithstanding the fact that its employee, Gordon, was driving the tractor, by virtue of the "full maintenance" agreement, Avis had the sole control over the tractor for purposes of service, maintenance and repair and Standard was specifically precluded from repairing, maintaining or tampering with the tractor. Although the control referred to under this type of contract could be relevant to an action for breach of implied warranty, it is not the sort of control required by the courts before invoking the doctrine of res ipsa loquitur. In order to apply the doctrine, the control attributable to the defendant must be such as to eliminate the possibility that the accident may have been caused by some intervening factor.

The gravamen of Standard's argument is that it is not necessary that the defendant

have exclusive control of the instrumentality that caused the damage in order to invoke the doctrine of res ipsa loquitur. Standard relies on Uberti v. District of Columbia, D.C.App., 215 A.2d 766 (1966); Safeway Stores v. West, 86 U.S.App.D.C. 99, 180 F.2d 25, cert. denied, 339 U.S. 952, 70 S.Ct. 840, 94 L.Ed. 1365 (1950) and Washington Annapolis Hotel Co. v. Hill, 84 U.S.App.D.C. 418, 174 F.2d 157 (1949), and claims they stand for the proposition that the control necessary for the application of the doctrine does not require the exclusion of all possibility that no one other than defendant touched or used the instrument.

■ We recognize that in some circumstances "[t]he control necessary to be shown does not necessarily require the exclusion of all possibility that no one other than defendant touched or used the instrument." *Uberti, supra,* 215 A.2d at 768.

■ However, the defendant must have some reasonably current, if not continuous control over the instrumentality if we are to apply res ipsa loquitur. It has long been established in this jurisdiction that the rule of res ipsa loquitur

> . . . arises in a case where the accident is such that, in the ordinary course of events, it would not have happened except through the negligence of the defendant, and where the facts relating to the accident are peculiarly within his knowledge. In such a case, from the mere happening of the accident, a presumption of negligence arises, which, if not satisfactorily explained by the defendant, authorizes a recovery.

Fisher v. Washington Coca-Cola Bottling Works, 66 App.D.C. 7, 9, 84 F.2d 261, 263 (1936), quoting with approval Moore v. Clagett, 48 App.D.C. 410, 415 (1919). *See also* Sweeney v. Erving, 228 U.S. 233, 240, 33 S.Ct. 416, 57 L.Ed. 815 (1913).

In the cases relied on by Standard, the control over the instrumentality causing

the injury had not fully passed out of the hands of the defendant.[4] In the instant case, full possession and control of the instrumentality causing the accident was in the plaintiff. Charles Gordon, Standard's driver, assumed control when he accepted delivery of the tractor from Avis and had exclusive possession for a period of some 9 or 10 hours preceding the accident.[5] The defendant, Avis, lost all management and control over the tractor when Gordon took possession of it and drove away from the defendant's shop.

This court has said that "[o]ne of the basic reasons for allowing an injured party to use the doctrine [of res ipsa loquitur] is that the defendant in control has greater access to the instrumentality causing the accident and is therefore in a better position to enlighten the trier of fact on the state of events surrounding the accident." Washington Sheraton Corp. v. Keeter, D. C.App., 239 A.2d 620, 622 (1968), citing with approval Powers v. Coates, D.C.App., 203 A.2d 425, 426 (1964). The court in the *Sheraton* case stated further, 239 A.2d at 622 "[a] party who is himself in control of the instrumentality may not rely on *res ipsa loquitur* against a party who shares that control. . . ."

In this case since the defendant Avis was not in control of the tractor it cannot be said that the defendant "has greater access to the instrumentality causing the accident and is therefore in a better position to enlighten the trier of fact on the state of events surrounding the accident. . . ." Washington Sheraton Corp. v. Keeter, *supra*.

Standard places much emphasis on the testimony of its driver who asserted that the tractor had not been mishandled or its condition changed after he picked it up from Avis' shop and that he in no way contributed to the accident which he claimed was caused solely by the sudden tilting forward of the cab of the tractor. While this testimony may have been relevant in rebutting a charge that the accident was caused by the contributory negligence of Standard's driver, it fails to establish a necessary prerequisite to the application of the doctrine of res ipsa loquitur, *i. e.,* control of the instrumentality by the defendant. Where the plaintiff has equal or greater access or control for so long a time the reason for invoking res ipsa loquitur vanishes. In short, on the facts at hand it cannot be said that the accident would not have happened except for some act of negligence by the defendant Avis.

We are mindful that in a limited number of cases involving "exploding bottles" courts have allowed the application of res ipsa loquitur. These cases are clearly unique in that the instrumentality concerned is self-contained; that is, a capped glass bottle containing an effervescent or carbonated liquid capable of generating considerable pressure. In this jurisdiction recovery was allowed for injury resulting when a ginger ale bottle exploded shortly after being delivered to the customer. The explosion occurred before the delivery boy left although the customer had closed the front door. There was evidence that the bottle had not been mishandled by the storekeeper or the boy and the court said it felt plaintiff's evidence established "affirmatively that no one other than the manufacturer was responsible." Canada Dry Ginger Ale Co. v. Jochum, D.C.Mun. App., 43 A.2d 42, 43 (1945).

4. In Uberti v. District of Columbia, D.C. App., 215 A.2d 766, 768 (1966) wherein an accident was caused by a large metal plate being used in a street under repair, the court stated that "[t]he plate here was as much under control of defendant as was the door spring in the Safeway case, or the chair in the Annapolis Hotel case." [Footnotes omitted.]

5. Gordon testified that he spent about 5 or 6 hours of actual driving time in which he drove about 250 miles. However, it appears that the distance travelled from Washington to Smithfield to Newport News was somewhat less than his estimate.

**248**

In two later cases, however, this court refused to apply the doctrine on the particular facts involved since the evidence did not establish that defendant had the exclusive control required. Hutchins v. Rock Creek Ginger Ale Co., D.C.App., 194 A.2d 305 (1963); Atwell v. Pepsi-Cola Bottling Co. of Washington, D. C., D.C.Mun.App., 152 A.2d 196 (1959).

We do not find that the cases involving "exploding bottles" are particularly analogous to the situation where a rented truck is entirely out of the defendant's management or possession for a period of 9 or 10 hours and has been driven approximately 200 miles while in the exclusive control of the plaintiff.

In such a situation there are far too many imponderables. Only the plaintiff's driver can say whether the truck was involved in an accident earlier that day. We don't know what may have occurred when the trailer was connected to the tractor or when the driver was at lunch, or was unloading the trailer. And even more disturbing was the driver's statement to the police that he "didn't see the 12′ clearance sign until I was right on it."

Although a jury might find otherwise on an issue of negligence, the court must decide in the first instance whether the necessary elements have been satisfied to permit the application of the doctrine of res ipsa loquitur. In this instance we are unable to agree that the element of exclusive possession and control of the defendant was established. Washington Sheraton Corp. v. Keeter, *supra*; Willoughby v. Safeway Stores, *supra*.

Consequently, we hold it was error to instruct the jury on res ipsa loquitur and that defendant's motion to set aside the verdict and for a new trial should have been granted.

Reversed and remanded.