**SHANNON & LUCHS CO., Appellant,**

v.

**Winifred H. TINDAL, Appellee.**

**No. 79–1048.**

District of Columbia Court of Appeals.

Argued March 4, 1980.

Decided June 9, 1980.

Rehearing En Banc Denied
July 9, 1980.

Richard W. Luchs, Washington, D.C., for appellant.

Harry L. Ryan, Jr., Arlington, Va., with whom Robert W. Hickey, Arlington, Va., was on brief, for appellee.

Before KELLY, HARRIS and FERREN, Associate Judges.

HARRIS, Associate Judge:

Appellant, who is appellee's landlord, brought, an action to recover possession of an apartment, based on the tenant's violation of a no-pet covenant in the lease. At the close of the evidence in a jury trial, the trial judge directed a verdict in favor of the tenant, finding as a matter of law that the landlord had permanently waived its right to enforce the covenant against her. After reviewing the record in the light most favorable to appellant, we find that there was sufficient evidence to require submission of the waiver issue to the jury. Accordingly, we reverse and remand for a new trial.

I

Appellant operates a large apartment building in northwest Washington. Appellee, a tenant in that building, signed a lease agreement that includes a covenant providing that "[t]enant will not keep any live animals or birds of any description without the prior written consent of landlord." The tenant has kept a cat in her apartment since her lease term began in September 1978, without having obtained written consent to do so from the landlord.

The landlord first learned about the cat on September 5, 1978, when another tenant reported its presence to the resident manager. Two days later, the landlord advised appellee by letter either to find another home for the cat or vacate the apartment. The tenant failed to comply.[1] On October 25, the landlord issued a notice to quit and vacate the apartment by December 1, 1978. When the tenant again failed to comply, the landlord in mid-December instituted a suit for possession. Upon learning that in the meantime its agent had continued to accept rent from the tenant, the landlord dismissed that suit, issued a new notice to quit in January 1979, and filed a new suit for possession in March 1979.

II

The landlord contends that the trial court erred in ruling as a matter of law that it had permanently waived the right to enforce the lease covenant by accepting rent after filing the first suit. Therefore, it urges, the court erred in directing a verdict. Although a lessor may waive a breach of a covenant by subsequent acceptance of rent, the question of waiver is one of intent which depends upon the totality of the circumstances in each case. *See Kaiser v. Rapley*, D.C.App., 380 A.2d 995, 997 (1977), and cases cited therein. In cases involving waivers of no-pet covenants, we have considered not only whether the landlord has subsequently accepted rent, but also whether he has acquiesced in the pet's presence, as reflected by his direct or indirect knowledge and his inaction over a significant period of time. *See Weaver Brothers, Inc. v. Newlin*, D.C.Mun.App., 74 A.2d 65

---

1. The tenant's response was a letter dated September 12 to the landlord requesting permission to keep the cat. That request was not granted.

(1950).[2] The mere acceptance of rent over a relatively brief period, then, usually is not enough to indicate a waiver as a matter of law. Such a routine receipt of rental payments might simply reflect an acceptance of what was legally due the landlord pending the outcome of a suit for possession. *See Kaiser v. Rapley, supra,* at 997.

 On review of a directed verdict, we must view the evidence in the light most favorable to the party against whom the judgment was entered, and that party must be given the benefit of all reasonable inferences from the evidence. *Corley v. BP Oil Corp.,* D.C.App., 402 A.2d 1258, 1263 (1979). A verdict may be directed only when the evidence is so clear that reasonable persons could reach but one conclusion. *Ibid., citing Bauman v. Sragow,* D.C.App., 308 A.2d 243, 244 (1973). If it is possible to derive conflicting inferences from the evidence, the trial judge should allow the case to go to the jury. *Corley, supra,* at 1263, *citing Seganish v. District of Columbia Safeway Stores, Inc.,* 132 U.S.App.D.C 117, 122, 406 F.2d 653, 658 (1968).

### III

 In this case, there is evidence on both sides concerning the issue of waiver. The landlord had no knowledge of the tenant's ownership of a cat until shortly after the tenancy had begun. Within a few days of learning about the cat, the landlord demonstrated its disapproval of the cat's presence and began action to enforce the lease agreement. Although an employee of the landlord did accept rent after it instituted the first suit, at no time did the landlord indicate its acquiescence in the cat's pres-

ence.[3] Under these circumstances, and viewing the evidence adduced at trial most favorably to the landlord, there was sufficient evidence such that the jury should have determined whether the landlord had waived the no-pet covenant. Accordingly, the directed verdict must be reversed, and the case is remanded for a new trial.

*So Ordered.*

2. The cases relied upon by the tenant presented situations in which the landlord had by inaction acquiesced in the maintenance of the pet with knowledge of the pet's presence. *See, e. g., Stewart v. Shannon & Luchs Co.,* D.C.Mun. App., 46 A.2d 863 (1946) (maintenance of pet for five years before action for possession started); *Newlin v. Weaver Bros., Inc.,* D.C. Mun.App., 69 A.2d 500 (1949) (maintenance of pet for four years). In this case, there is as a minimum a serious question of fact as to whether the landlord knowingly acquiesced in the cat's presence.

3. The questioned acceptance of rent is limited to a two-month period at most. It is clear that the landlord did not prejudice itself by accepting rent for October and November; this comprised the grace period during the pendency of the notice to quit, in which the tenant would have been permitted to correct the violation. Only the acceptance of rent in December and January was at issue; no rental payments were accepted after service of the second notice to quit.