Lillian PAZMINO, et al., Appellants,

v.

WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY, et al.,
Appellees.

No. 91–CV–992.

District of Columbia Court of Appeals.

Argued Oct. 21, 1992.

Decided March 15, 1994.

Victor E. Long, with whom Joseph A. Malouf, Washington, DC, was on the brief, for appellants.

Cynthia R. Mabry, Asst. Gen. Counsel, Washington Metropolitan Area Transit Authority, with whom Robert L. Polk, Gen. Counsel, Arnold I. Melnick, Deputy Gen. Counsel, and Gerard J. Stief, Associate Gen. Counsel, were on the brief, for appellees.

Before ROGERS, Chief Judge, and FERREN and STEADMAN, Associate Judges.

STEADMAN, Associate Judge:

On March 21, 1987, a bus driven by John Bryant collided with an automobile driven by Dorothy Chappell. Chappell was traveling in front of the bus and the accident occurred as she attempted to make a U-turn. Plaintiff/appellant Lillian Pazmino [1] was a passenger in the bus and was injured when she was thrown from her standing position near the back of the bus into the fare box in the front of the bus. We agree with appellant that the trial court erred in directing a verdict at the close of plaintiffs' case in favor of defendant/appellee Washington Metropolitan Area Transit Authority ("WMATA"),[2] and accordingly we reverse and remand for further proceedings.

**A.**

■ We begin with a review of the applicable legal principles. A directed verdict is proper only if there is no evidentiary foundation, including all rational inferences from the evidence, by which a reasonable juror could find for the party opposing the motion, considering all the evidence in the light most favorable to that party. *Washington v. A & H Garcias Trash Hauling Co.*, 584 A.2d 544, 545 (D.C.1991); *see Payne v. Soft Sheen Products, Inc.*, 486 A.2d 712, 718–19 (D.C. 1985); *see also Washington Metropolitan Area Transit Authority v. Jones*, 443 A.2d 45, 50 (D.C.1982) (en banc) (only where "considering every legitimate inference, only one conclusion may be drawn ... [may] the trial court ... rule as a matter of law on negligence ..."). "In so viewing the evidence, the court 'must take care to avoid weighing the evidence, passing on the credibility of witnesses or substituting its judgment for that of the jury.'" *Vuitch v. Furr*, 482 A.2d 811, 814 (D.C.1984) (quoting *Corley v. BP Oil Corp.*, 402 A.2d 1258, 1263 (D.C.1979)). "If it is possible to derive conflicting inferences from the evidence, the trial judge should allow the case to go to the jury." *Shannon & Luchs Co. v. Tindal*, 415 A.2d 805, 807 (D.C.1980). In reviewing an order granting a motion for a directed verdict, this court must apply the same standard as the trial court. *Vassiliades v. Garfinckel's, Brooks Bros.*, 492 A.2d 580, 586 (D.C.1985); *Vuitch v. Furr, supra*, 482 A.2d at 814.

■ This court has held that "WMATA, like any common carrier, owes a duty of reasonable care to its passengers." *McKethean v. Washington Metropolitan Area Transit Authority*, 588 A.2d 708, 712 (D.C. 1991). This requires "all the care and caution which a bus driver of reasonable skill, foresight, and prudence could be fairly ex-

---

**1.** Emilio Pazmino, Lillian Pazmino's husband, is also an appellant. He was not involved in the accident, but seeks damages for loss of consortium. For convenience we refer to Lillian Pazmino as the sole appellant.

**2.** The suit was originally against both WMATA and the driver of the car, Dorothy Chappell. Prior to trial, appellant settled the claim against Chappell, and trial was held only on appellant's suit against WMATA and WMATA's cross-claim against Chappell for indemnity and contribution.

In light of our ruling on the directed verdict issue, we have no occasion to address appellant's other ground of appeal, viz., the trial court's refusal to admit the deposition of the bus driver as an unavailable witness under Super.Ct.Civ.R.

32(a)(3)(D), although appellant strenuously attempted for five days during the trial to effectuate service of a subpoena on the bus driver after he failed to join WMATA's counsel in the courtroom at the commencement of trial as had seemed at least a possibility. The trial court ruled that WMATA's counsel had made no representations with respect to the bus driver's presence on which appellant had the right to rely and that appellant should have served the bus driver before the trial began. The parties dispute whether appellant properly preserved for appeal arguments based upon Super.Ct.Civ.R. 32(a)(3)(E) or a theory of admission by a party or declaration against interest and whether those theories apply in any event.

pected to exercise," and "[w]hat is reasonable depends upon the dangerousness of the activity involved. The greater the danger, the greater the care which must be exercised." *D.C. Transit Sys. Inc. v. Carney,* 254 A.2d 402, 403 (D.C.1969).[3]

■ Many years ago, we noted the validity of the general rule that "the primary duty to avoid collision as between motorist ahead and the motorist following lies with the motorist behind," although this principle does not warrant a finding of liability as a matter of law and a duty of care rests of course on both motorists. *Price v. Derrickson,* 89 A.2d 231, 232 (D.C.1952). *See also Akers v. Tomlinson,* 222 A.2d 644, 645 n. 2 and cases cited (D.C.1966). Thus, the driver of the trailing car has a duty to exercise reasonable care to avoid injuries. *See* 60A C.J.S. MOTOR VEHICLES § 323(1) (1969). Normally, the negligence of the trailing car colliding with a forward car is essentially a question for the fact finder to determine and not a matter of law. *Price v. Derrickson, supra,* 89 A.2d at 232. The motorist has a duty to keep a lookout and to observe the movements of vehicles ahead. *See* 60A C.J.S. MOTOR VEHICLES § 323(1) (1969).

These general principles are reflected in the District's traffic regulations. 18 DCMR § 2201.4 (1987) provides that "[t]he driver of a vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of the vehicle being followed, the traffic upon the highway, and the condition of the highway." With respect to passing another vehicle, the driver, overtaking another car traveling in the same direction, shall pass to the left at a safe distance, *id.* § 2202.2, and if while overtaking and passing, the driver crosses the center of the road, then the driver shall only overtake and pass when the "left side is clearly visible and is free of oncoming traffic

for a sufficient distance ahead to permit the overtaking and passing to be completed without interfering with the safe operation of any vehicle ... overtaken." *Id.* § 2202.7. The driver of a vehicle may not move from the lane in which he is driving "until the driver has first ascertained that the movement can be made with safety." *Id.* § 2201.8.

■ Finally, we make note of the posture of the case, presenting a potential situation of two joint tortfeasors. WMATA emphasizes the culpability of Chappell in causing the accident, and contends that Chappell's admission that the accident was her fault demonstrates that the bus driver was not negligent. This emphasis is misplaced, however, for there can be more than one proximate cause of an accident. Any conduct, therefore, that was a substantial contributing factor in causing the accident is a legal cause of that accident. *See Baltimore v. B.F. Goodrich Co.,* 545 A.2d 1228, 1232 (D.C.1988); *District of Columbia v. Freeman,* 477 A.2d 713, 715–16 (D.C.1984); *Lacy v. District of Columbia,* 424 A.2d 317, 322 (D.C.1980); *see also Birchall v. Capital Transit Co.,* 34 A.2d 624, 626 (D.C.1943) ("the jury might have found that plaintiff's damage resulted entirely from the negligence of the other driver. But it may, on the other hand, have found that the bus operator was guilty of negligence ... and that such negligence was a contributing cause of plaintiff's injury. These were questions for the jury, and not for the court."). Thus, the fact that Chappell may have been negligent does not mean that WMATA is free of negligence. The duty at issue here is not that of WMATA to Chappell but rather that of WMATA to appellant, a standee on the WMATA bus. *See* note 3 *supra.*

**B.**

■ The trial court here concluded that there was not "any evidence in this case at all

---

3. In an early case in this jurisdiction, the court took note of "the familiar rule that even slight negligence imposes liability on a common carrier entrusted with the transportation of human cargo.". *Wiggins v. Capital Transit Co.,* 122 A.2d 117, 118 (D.C.1956). Subsequently, in *D.C. Transit Sys. Inc. v. Carney, supra,* 254 A.2d at 403, we observed that although it had been said that a common carrier is held to the "highest degree of care," in fact "there are no categories

of care; *i.e.,* the care required is always reasonable care." However, as indicated, we immediately went on to point out that the greater the danger, the greater the care which must be exercised. Thus, it is plainly significant that the duty of a bus driver runs not only to other cars on the road but to his or her passengers, some of whom, as here, may be standing and hence particularly vulnerable.

from which a juror could reasonably conclude that the bus driver was negligent [because appellants] presented no evidence at all of where the bus was, what it did, who the driver was, what he did, [and] what anybody else saw about this accident." The court further concluded that "[t]o accept [appellants'] version of events would require [us] to conclude that there was negligence [merely] because the accident happened."[4] It is of course quite correct that the mere happening of an accident does not constitute proof of negligence. *District of Columbia v. Davis,* 386 A.2d 1195, 1200 (D.C.1978) ("mere happening of an accident does not impose liability or reveal proof of negligence."); *see D.C. Transit Sys. Inc. v. Carney, supra,* 254 A.2d at 403 ("[t]here must be some evidence from which the jury could find or infer that the bus driver was negligent before [the bus company] can be held liable for [the passenger's] injuries."). However, we think that there was more evidence here to support a jury finding of negligence on the part of the bus driver than the mere happening of the accident, particularly in light of the reasonable inferences that the jury might draw.

The principal witness as to the details of the accident was Chappell. She testified that she was driving north on 14th Street, N.W., in late afternoon. She said that at that location, 14th Street had one lane of traffic in each direction.[5] She was hurrying to get to the bank and was therefore moving slightly over the speed limit, perhaps at a rate of 35 miles per hour. As she approached the middle of the block, she realized that she had passed the location of her bank and therefore slowed her vehicle to a speed of some 10 to 20 miles per hour in order to make a U-turn. She checked her rear-view and side-view mirrors and started to make the U-turn as she moved to the left. As she started the turn, the bus impacted with the side of her car. Prior to the collision, she had not seen the bus approaching; it was just there "out of the spur of the moment." The bus driver did not sound his horn or give any other kind of warning signal.

Further testimony was provided by both appellant and Bella Beck, a passenger on the bus, that at the time of the accident appellant was standing toward the back of the bus, by the rear exit, holding onto a rail. Suddenly without warning the bus abruptly stopped, appellant lost her grip, slid down the aisle toward the bus driver, hit her head against the farebox, and became unconscious. Ms. Beck described the bus's movement as sudden and that all the passengers were "shaken up" by the stop.[6]

In considering the totality of the evidence, including all rational inferences, in the light most favorable to appellant and in the complete absence of any contrary testimony by the bus driver or otherwise, we think a reasonable jury could find a negligent overtak-

---

4. Appellant also asserts that the trial court erred in directing a verdict for appellee because there was sufficient evidence for the jury to conclude that the bus driver had the last clear chance to avoid the accident. Because we agree that there was sufficient evidence for a jury to conclude that WMATA was negligent, we need not address this argument.

5. The trial court took pains itself to inquire into this fact, which we thus take as established for purposes of this appeal:

THE COURT: Counsel, I'm sorry. The question that you asked before is one [which] is ambiguous. Only two lanes of traffic on 14th Street? You mean one north and one south or two north and two south? Would you clear up—
MR. LONG [appellant's counsel]: Thank you, Your Honor.
BY MR. LONG:
Q. With respect to the number of lanes, how many lanes were going in your direction of travel?

A. It's one lane going in my direction and one lane going in the opposite direction. I was in the right lane at the time, going up.

6. Compare the "sudden stop" cases, cited in *Washington Metropolitan Area Transit Authority v. Bell,* 632 A.2d 414 (D.C.1993). There, applying Maryland law, we held that summary judgment should have been granted in favor of the common carrier where the only testimony of negligence was that of plaintiff, who said that the bus had taken a "real sharp turn" that pushed her out of her seat. We noted, *inter alia,* the absence of any evidence that anyone else on the bus was affected by the turn or that the movement had any unusual or extraordinary effect on appellant or the presence of any other facts from which to infer negligence. All three factors are present here. *Cf. Boyko v. Washington Metropolitan Area Transit Authority,* 468 A.2d 582 (D.C. 1983) (reversing judgment notwithstanding the verdict where plaintiff testified that bus's movement was "abrupt" and "violent" but whose cause was unexplained).

ing in violation of the "primary duty" of the trailing vehicle. While no direct evidence had been presented about the precise location or movement of the bus prior to the accident, the jury could conclude that the bus at the outset of the incident should have been at a reasonable and prudent distance behind Chappell [7] and that Chappell's actions by their nature should have alerted the driver to the need for particular caution to avoid contributing to an untoward incident, including not pulling into the oncoming lane to attempt to pass without warning.[8] In the middle of the block, Chappell slowed down from a speeding velocity to the considerably slower pace that would enable her to make a U-turn, which presumably automatically activated her rear brake lights or otherwise gave cause for alert.[9] Her purpose was uncertain. She moved to the left on a two-lane street. The bus driver did not sound the horn or give any other indication of danger or of an intent to pass. Appellant points out, without contest by appellee, that U-turns were not prohibited at that part of 14th Street. See 18 DCMR § 2204.6 (1987) (U-turns prohibited where there are "No U–Turn" signs); *id.* § 2204.7 (U-turns prohibited at controlled intersections). The jury could find that the bus was the trailing vehicle. It contained at least one passenger who was standing and hence particularly vulnerable to any sudden stop or other movement. In fact, the abrupt nature of the stop was sufficient to hurl appellant almost the entire length of the bus, knocking her unconscious. Because this was not a situation in which the jury could only come to one conclusion, *see Shannon & Luchs v. Tindal, supra,* 415 A.2d at 807, the issue of negligence should not have been taken from the jury at the close of the plaintiff's case.

*Reversed and remanded.*

---

7. If before the deceleration by Chappell, the bus was in the process of passing her, the bus would be improperly traveling in excess of the speed limit, even greater than Chappell herself. There was in fact some evidence of this possibility; Chappell did not see the bus in either her side or rear mirror so that it may then have been in her blind spot in the oncoming lane.

8. The case before us is quite different from *D.C. Transit Sys. Inc. v. Carney, supra,* relied on by appellee, where a car originally located some 25 feet behind the bus cut across three lanes of traffic directly in front of the bus to make a right turn.

9. There was no evidence one way or the other as to the activation of a turn signal by Chappell.