**Dorothy STRICKLAND, Appellant,**

v.

**Thomas PINDER, M.D.,
et al., Appellees.**

No. 04–CV–1508.

District of Columbia Court of Appeals.

Argued March 9, 2006.
Decided May 25, 2006.

---

against her on the merits.

Henry E. Weil, Rockville, MD, for appellant.

Alfred F. Belcuore, for appellees.

Before WASHINGTON, Chief Judge, REID, Associate Judge, and BELSON, Senior Judge.

WASHINGTON, Chief Judge:

Appellant seeks review of the trial court's October 20, 2002 grant of the defendant's Motion for Judgment on the basis that the plaintiff's expert failed to both establish a national standard of care and provide, as a matter of law, sufficient basis for a reasonable juror to find that any alleged breach of the duty of care by the defendants had proximately caused the death of the decedent. The appellant contends that the trial court erred in finding: 1) that the appellant's expert failed to establish a national standard of care; and 2) that the appellees did not waive their challenge to the plaintiff's expert on the standard of care by failing to make a timely objection.[1] Finding no error, we affirm.

## I.

### A. Facts

Quicha Reid reported to the emergency room of Providence Hospital on June 6, 2001 complaining of dizziness and chest pain. At the time, she was twenty-six weeks pregnant, weighed 300 pounds and suffered from high blood pressure, periodic bouts of chest pain, and shortness of breath. Doctors admitted Ms. Reid to Providence Hospital where she came under the care of several doctors including Drs. Thomas Pinder and Roy D. Flood. In an effort to rule out a tear in Ms. Reid's aorta, Drs. Pinder and Flood ordered a battery of tests including a transthoracic and transesophogeal echocardiogram and an MRI without contrast materials. The tests revealed that Ms. Reid suffered from a variety of cardiothoracic maladies that would require surgery at a later date, but at no point did any of these tests reveal any evidence of a tear in Ms. Reid's aorta.

Physicians stabilized Ms. Reid's blood pressure and discharged her from the hospital on June 15, 2001. On June 27, 2001, Ms. Reid reported for a scheduled obstetrician appointment where her physician admitted her to Washington Hospital Center under continued concern about her high blood pressure and the health of the fetuses. On the morning of July 1, 2001, Ms. Reid again complained of chest pains. Doctors temporarily alleviated her pain but later in the day, Ms. Reid became unresponsive and the heart rates of the two fetuses began to drop. Physicians performed an emergency Caesarean but tragically both Ms. Reid and one of the fetuses died shortly after the procedure. An autopsy later disclosed that Ms. Reid died as a result of an accumulation of blood around the heart due to a rupture in her aorta.

### B. Procedural History

Dorothy Strickland, the decedent's mother, brought suit against the appellees alleging that they breached their standard of care by not performing additional tests when the decedent initially reported to the emergency room complaining of chest pains. The appellant asserted that had the physicians performed the additional tests, they would have discovered the dissections in the decedent's aorta and a cardiac surgeon could have addressed them, which would have prevented her death. At trial, the appellant called Dr. Robert Stark as an expert witness in cardiology and internal medicine. The appellee made no challenge to Dr. Stark's qualifications to serve as an expert witness. During his testimony, Dr. Stark expressed the opinion that Drs. Pinder and Flood breached their

---

1. Appellant also asserts in her reply brief that the trial court erred in finding that the expert's testimony was insufficient to establish that the appellees' breach of the standard of care proximately caused Ms. Reid's death.

Given our holding on the appellant's attempt to establish a national standard of care in reference to the decedent's treatment, we need not and do not reach the merits of the proximate cause claim.

duty of care by failing to rule out a dissection or breach in the patient's aorta by performing either an aortic angiogram using dye or a magnetic resonance imaging exam with contrast material. Early on during Dr. Stark's testimony, trial counsel for the appellee objected on the grounds that he had not laid an adequate foundation to give his opinion of the standard of care in the District of Columbia. The court instructed trial counsel for the appellant to "start more from the beginning [of] how he [became] aware that a standard of care applies to the situation before we get to the standard of care."

Appellant's counsel continued to question the expert about his opinion regarding the standard of care which elicited additional objections from appellees' trial counsel. Judge Dixon then summoned the attorneys to the bench and gave the following instruction:

I'm going to allow Mr. Weil to proceed with this direct examination of the witness. If, in the end the record does not demonstrate the existence of a standard of care as opposed to a personal opinion I'll have to deal with it at that time. So, your objections are taken under advisement, but I'm going to allow the testimony to proceed.

At the close of redirect, appellees' counsel moved to strike Dr. Stark's testimony and for judgment on their behalf on the grounds that the expert had failed to establish a basis for his opinion of the national standard of care. Citing the fact that the expert failed to "clearly relate the standard of care to the practices recognized and followed by similarly situated doctors throughout the country," the court granted the appellees' motion for judgment.

## II.

The Court of Appeals will review a motion for judgment as a matter of law *de novo* by applying the same standard as the trial court. *Snyder v. George Wash. Univ.*, 890 A.2d 237 (D.C.2006). "A [motion for judgment as a matter of law] is proper only if there is no evidentiary foundation, including all rational inferences from the evidence, by which a reasonable juror could find for the party opposing the motion, considering all the evidence in the light most favorable to that party." *Majeska v. District of Columbia*, 812 A.2d 948, 950 (D.C.2002) (quoting *Pazmino v. Washington Metro. Area Transit Auth.*, 638 A.2d 677, 678 (D.C.1994)). "When 'viewing the evidence, the court must take care to avoid weighing the evidence, passing on the credibility of witnesses or substituting its judgment for that of the jury. If it is possible to derive conflicting inferences from the evidence, the trial judge should allow the case to go to the jury.' " *Id.* (internal quotations and citations omitted).

At the outset of a medical malpractice case, the "plaintiff must establish through expert testimony the course of action that a reasonably prudent doctor with the defendant's specialty would have taken under the same or similar circumstances." *Meek v. Shepard*, 484 A.2d 579, 581 (D.C.1984) (citing *Morrison v. MacNamara*, 407 A.2d 555, 560–65 (D.C. 1979)). "The personal opinion of the testifying expert as to what he or she would do in a particular case, without reference to a standard of care, is insufficient to prove the applicable standard of care." *Travers v. District of Columbia*, 672 A.2d 566, 568 (D.C.1996). "[I]t is insufficient for an expert's standard of care testimony to merely recite the words 'national standard of care.' " *Hawes v. Chua*, 769 A.2d 797, 806 (D.C.2001) (citations omitted). The testifying expert must establish that a particular course of treatment is followed nationally either through "reference to a published standard," "[discussion] of the

described course of treatment with practitioners outside the District ... at seminars or conventions," or through presentation of relevant data. *Travers, supra,* 672 A.2d at 568–69; *Snyder, supra,* 890 A.2d at 241 n. 3 (quoting *Hawes, supra,* 769 A.2d at 806).

■ Even when viewed in the light most favorable to the appellant, we are satisfied that Dr. Stark's testimony was insufficient to establish a national standard of care. The only attempt that the expert made to reference a national standard was by stating in rather general terms that his opinion was "[w]hat other similarly trained doctors would have done under similar circumstances," or that it was the "standard of care what doctors do in hospitals around the country." Even after explicit direction from the trial judge, Dr. Stark made no attempt to link his testimony to any certification process, current literature, conference or discussion with other knowledgeable professionals, any of which would have established a basis for his discussion of the national standard of care.[2] *See Snyder, supra,* 890 A.2d at 246.

Appellant argues that the expert's educational and professional background was sufficient to demonstrate that he was familiar with the national standard of care. Appellant's argument is without merit. The trial court itself noted that there was "no doubt in this case that Dr. Stark qualifie[d] as an expert cardiologist." At issue in this case was the expert's basis for stating that the appellees' actions fell below the national standard of care. Dr.

Stark made repeated references to a standard and claimed that it was applicable in this case. Without any supplemental support, however, this testimony amounted to nothing more than the expert's opinion, which this court has repeatedly stated is insufficient to demonstrate the national standard of care. *Travers, supra,* 672 A.2d at 568; *Meek, supra,* 484 A.2d at 581.

Because appellant failed to establish a national standard of care requiring the administration of additional tests, specifically an aortic angiogram using dye or a magnetic resonance imaging exam with contrast material, judgment for the appellees as a matter of law was appropriate.

### III.

Appellant also claims that the appellees waived their objection to the expert's "familiarity with the standard of care" by not challenging the witness' qualifications when the appellant offered him as an expert. We needn't address the merits of appellant's claim as appellees' objection below was aimed at the lack of basis for Dr. Stark's testimony on the standard of care and not on his qualifications as an expert. Appellees did make multiple timely objections to the expert's testimony on the standard of care leading the trial court to instruct defense counsel that he would allow the expert to continue testifying and address any deficiencies at the end. As such appellant's argument is without merit.

2. In *Snyder, supra,* this court recently reversed a grant of summary judgment holding that a "statement[ ] indicat[ing] that [the witness'] expert opinion reflected evidence of a national standard of care and was 'not ... based upon [his own] personal opinion, nor mere speculation or conjecture,'" was sufficient to allow the plaintiff's case to survive a motion for judgment as a matter of law. 890 A.2d at 246 (quoting *Hawes, supra,* 769 A.2d at 806). In that case, the testifying expert referenced conferences with the College of Surgeons, surgeon certification commissions, relevant scholarly literature that he made an effort to keep current with, hospital staff meetings and national surgical society meeting as resources establishing that his testimony was not based on personal opinion but a national standard. *Snyder, supra,* 890 A.2d at 246.

For the foregoing reasons, the decision of the Superior Court is, therefore,

*Affirmed.*