*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

Nos. 17-CV-370 & 17-CV-1186

WASHINGTON NATIONALS STADIUM, LLC, ET AL., APPELLANTS,

v.

ARENAS, PARKS AND STADIUM SOLUTIONS, INC., APPELLEE.

Appeals from the Superior Court
of the District of Columbia
(CAR-1938-15)

(Hon. Neal E. Kravitz, Trial Judge)

(Argued May 30, 2018                    Decided September 6, 2018)

*James A. Sullivan*, with whom *William R. Martin* and *Sasha E. Hodge-Wren* were on the brief, for appellants.

*Donald A. Rea*, of the bar of the State of Maryland, *pro hac vice*, by special leave of court, with whom *Nicholas C. Stewart* was on the brief, for appellee.

Before BLACKBURNE-RIGSBY, *Chief Judge*, FISHER, *Associate Judge*, and RUIZ, *Senior Judge*.

BLACKBURNE-RIGSBY, *Chief Judge*: The Washington Nationals Stadium, LLC and Washington Nationals Baseball Club, LLC ("appellants") appeal a March 2, 2017, order of judgment and a September 13, 2017, amended order of judgment entered against them after a jury trial before Judge Neal E. Kravitz in favor of

Arenas, Parks and Stadium Solutions, Inc. ("appellee").[1] The case involves competing breach of contract claims related to appellee's installation of a decorative floor throughout the Nationals Park ("Park"). Appellants had refused to pay appellee even after most of the work was complete, claiming the floor was too slippery. On appeal, appellants contend that, during trial, the trial court (1) abused its discretion in not allowing them to call two independent fact witnesses to testify to the slippery condition of the floor; (2) erred as a matter of law in denying their motions for judgment on appellee's anticipatory breach claim; and (3) abused its discretion in limiting their claim for attorney's fees solely to those fees associated with the Rust-Oleum mechanic's lien on the Park. We affirm.

## I.

Appellants entered into a series of contracts with appellee in which appellee agreed to install a decorative floor throughout the Park. The largest of these contracts, the "Prime Contract," was signed on November 11, 2013, and was worth $3,268,680, to be paid in six equal annual installments through January 31, 2019.

---

[1] The original judgment was amended to account for an attorney's fees award to appellants in the amount of $66,731.35.

Appellee subcontracted with Majestic Flooring Solutions Corporation ("Majestic") to provide labor and Rust-Oleum to provide supplies.

Prior to completion of the project, the relationship between appellants and appellee deteriorated. The triggering event seems to have been when appellee failed to timely pay Rust-Oleum, and in response Rust-Oleum filed a mechanic's lien against the Park in early May of 2014. Shortly thereafter, appellants terminated contact with appellee and refused to give them access to the Park to complete the rest of the work. Appellants justified their actions by claiming that appellee breached the Prime Contract first by installing a defectively slippery floor.[2] At the same time, appellants began separately and secretly negotiating with Rust-Oleum, appellee's materials subcontractor, for a recoat of the floor and release of the mechanic's lien. On September 12, 2014, Majestic also filed a mechanic's lien against the Park for $532,262.64 as Majestic had not been timely paid by appellee.

---

[2] The Prime Contract did not provide any specifications for the slip resistance of the floor, but stated that the work was to "be performed in a professional manner consistent with the industry standard of care for such work in the local jurisdiction."

On December 29, 2014, appellee filed a mechanic's lien for $2,786,385, the amount that appellee alleged was owed under the Prime Contract. Appellants refused to make any of the installment payments that were due on January 31 in 2015, 2016, and 2017.

In May of 2015, appellee and appellants both filed breach of contract claims against the other in D.C. Superior Court.[3] Trial began on February 13, 2017, and concluded on February 28, 2017. At trial, appellee argued that appellants had breached the Prime Contract by not permitting it to finish the contract and by failing to pay the remaining balance owed under the contracts. Appellants argued that appellee breached the Prime Contract by installing a defective floor[4] and in

---

[3] On March 23, 2015, Majestic filed a complaint against appellants and appellee asserting claims including breach of contract for failure to pay for work performed at the Park and to enforce a mechanic's lien against appellants' leasehold interest in the Park. Prior to trial, Majestic settled with appellee. On December 10, 2015, counsel for appellee also entered their appearance on behalf of Majestic.

[4] Appellants presented multiple witnesses who testified to the floor's slippery nature. Structural engineer Kenneth Kosteva testified that the "slip resistance provided by the installed coating did not meet the IBC [International Building Code] requirement for a slip resistant floor system." Donald Landin, a certified walkway auditor safety specialist, testified that the "coated walkways had been perceived to be excessively slippery when wet" and that he sensed "the floor was not of high traction." A number of lay witnesses also testified about the slippery nature of the floor, and to having observed individuals slip, or to having

(continued…)

failing to honor its contractual obligations with Rust-Oleum, which resulted in a mechanic's lien on the Park. Appellants further argued that they could not breach the Prime Contract for those installment payments which were not yet due, and moved for partial judgment as a matter of law under Super. Ct. Civ. R. 50, which the trial court denied.

The jury found that appellants breached the Prime Contract and that appellee was entitled to $1,991,584.40, which represented the amount remaining on the Prime Contract after deducting a setoff of $794,803.60 to account for appellee's breach.[5]

_____

(…continued)
slipped themselves. Conversely, appellee's expert witness, architect Lawrence Dinoff, testified "that the floor was reasonably safe."

[5] Although the jury did not specify the nature of appellee's breach, the trial court inferred that this breach was not based on the quality of the floor, but rather, the failure to remove the Rust-Oleum mechanic's lien—the amount of the set-off was exactly equal to the sum of the $764,912 appellants paid to remove the Rust-Oleum lien plus the $29,891.60 in clean-up costs appellants incurred as a result of appellee's work.

**II.**

On appeal, appellants contend that the trial court abused its discretion in precluding the testimony of two independent fact witnesses, fans Deborah Bailey and Ann Rafael, who emailed appellants in May of 2014 about the slippery condition of the stadium floor. Per the amended scheduling order, appellants filed their witness list on the December 16, 2015, deadline, but did not include these witnesses. On September 22, 2016, the parties appeared for a pretrial conference on their original pretrial statement, which did not include these witnesses and also failed to include the trial exhibits. After this pretrial conference, the trial court issued a pretrial order which stated that the parties could not offer **"*any witness . . . not disclosed at pretrial*[6]** except for purposes of impeachment" and instructed the parties to file an "amended pretrial statement ***with exhibits***" (emphasis added).[7]

---

[6] Given that the trial court did not schedule an additional pretrial conference and instead, set the case for trial, we interpret this clause as meaning "any witness . . . not disclosed at" the September 22, 2016, pretrial conference.

[7] The order to file an amended pretrial statement was not tantamount to an extension of time to file witness lists and reopen discovery, but rather, an order that the parties amend their prior submission to include exhibits. D.C. Super. Ct. Civ. R. 16 (e)(2) requires that the parties include any objections to exhibits in their pretrial statement, whereas (f)(2) requires the parties to bring their trial exhibits to the pretrial conference. However, in the September 15, 2016, pretrial statement, the parties stated their intention to file their exhibit lists within thirty days, thus

(continued…)

The fan witnesses were subsequently added in an amended joint pretrial statement filed on November 1, 2016, more than seven and a half months after the close of discovery, and almost a year after the witness lists were due. On January 12, 2017, appellee filed a praecipe requesting a pretrial status conference, noting that appellants had identified twenty-eight different individuals as potential witnesses, but that they had indicated in a prior hearing that they would likely call no more than six of these individuals. The praecipe included an email from appellee dated January 7, 2017, in which appellee asked appellant to identify the witnesses they intended to call, which appellee asserts was never answered.

The parties appeared for a second pretrial conference on February 1, 2017.[8] Appellants argued that appellee did not file a motion *in limine* seeking to exclude the testimony of the two witnesses after the filing of the amended joint pretrial statement on November 1, 2016.[9] Appellants also argued that there was still time

---

(…continued)
indicating the need for additional time beyond the September 22, 2016, pretrial conference.

[8] The case was transferred from Judge Ross to Judge Kravitz on December 30, 2016.

[9] Given that motions *in limine* were due the same day as the amended pretrial statement, the appellants' argument that appellee should have filed a motion *in limine* (with respect to new information first appearing on the amended
(continued…)

prior to trial for appellee to contact these witnesses. The court set a February 9, 2017, follow-up hearing for additional arguments on this issue.

At the February 9, 2017, hearing, appellants argued that they had previously disclosed these witnesses by producing the fan emails in opposition to appellee's motion for summary judgment and that it would be unfair to exclude these witnesses when opposing counsel became aware of their inclusion on the witness list in November 2016. In rebuttal, appellee argued that appellants failed to comply with their Rule 16 disclosure obligation[10] as these witnesses were not included on the December 16, 2015, witness list, as required by the amended scheduling order, nor did appellants move to amend their witness list before the discovery period closed. Appellee further argued that there was insufficient time to conduct discovery and depositions of these witnesses prior to trial, which was scheduled to start in less than a week.

---

(…continued)
pretrial statement filed that same day) indicates that no new witnesses were to be added in the amended pretrial statement.

[10] D.C. Super. Ct. Civ. R. 16 (b)(5)(B) states that "[n]o witness may be called at trial, except for rebuttal or impeachment purposes" unless he or she is identified on the witness list filed pursuant to the scheduling order.

"The decision whether to allow a lay witness to testify who has not been identified as a witness in a pretrial order is within the sound discretion of the trial court, and its decision will not be disturbed absent an abuse of discretion." *Hechinger Co. v. Johnson*, 761 A.2d 15, 23 (D.C. 2000). Here, the trial court determined that the inclusion of these witnesses would prejudice appellee as trial was scheduled to start in a week and appellee would not have the time it needed to complete discovery[11] for these witnesses. The trial court emphasized the purpose of the rules "so that everything is transparent and that each side knows who the other sides universe of possible witnesses include[s] . . . ." This transparency is necessary to avoid "trial by ambush" so that parties cannot introduce testimony without the opposing party having a full and fair opportunity for discovery. *Johnson v. District of Columbia*, 728 A.2d 70, 76 (D.C. 1999). At the February 1, 2017, hearing, the trial court recognized that a reasonable party relies on the witness lists and that it would "really put[] the other side at an unfair disadvantage" to permit the addition of witnesses after discovery had closed. At the follow-up hearing on February 9, the trial court also noted that appellants had not taken any steps since the prior hearing "to put the plaintiff in a fair position" such as arranging depositions and/or serving subpoenas on the witnesses' doctors. The

---

[11] Discovery could include depositions of the fans themselves, subpoenas for medical records for any witness alleging they slipped on the floor, and depositions of third-party medical providers/insurers and/or third-party witnesses.

trial court further determined that, although appellants did not act in bad faith in failing to comply with the pretrial scheduling order and deadlines, the inclusion of these two witnesses had the potential to significantly delay the trial date and neither side had asked for a continuance. In placing the burden of the Rule 16 violation on appellants, the trial court properly balanced the factors applicable to its discretionary ruling. *See, e.g.*, *Weiner v. Kneller*, 557 A.2d 1306, 1311-12 (D.C. 1989).[12] Finally, although not explicitly discussed by the trial court pretrial, our review of the record on appeal shows that appellants were not significantly prejudiced by the exclusion of these witnesses as their testimony would have been cumulative of the multiple fact witnesses who testified to the condition of the floor and would not have helped the jury answer the central question as to whether appellee installed a floor which failed to comply with industry standards.[13] Thus, any error would be harmless.[14]

---

[12] The trial court explicitly considered whether the inclusion of the witnesses would prejudice appellee, whether the rule violation was inadvertent or willful, and the impact of allowing the proposed testimony on the orderliness of trial.

[13] Moreover, appellants could have called the fan witnesses for impeachment or rebuttal purposes if necessary during appellee's presentation of the evidence. D.C. Super. Ct. Civ. Rule 16 (b)(5)(B).

[14] Appellants did not make specific arguments before the trial court as to how the exclusion of these two witnesses would prejudice them, such as their argument on appeal that these were their only independent corroborating witnesses.

## III.

Appellants further contend that the trial court erred in denying their motion for judgment on appellee's anticipatory breach of contract claim. "The Court of Appeals will review a motion for judgment as a matter of law *de novo* by applying the same standard as the trial court." *Strickland v. Pinder*, 899 A.2d 770, 773 (D.C. 2006). Under Super. Ct. Civ. R. 50 (a), judgment as a matter of law is proper "only upon a finding that a party has been fully heard" and when "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party." *Cardenas v. Muangman*, 998 A.2d 303, 306 (D.C. 2010) (internal quotation marks omitted). "A contract is breached if a party fails to perform when performance is due[,]" at which time the cause of action accrues "and the statute of limitations begins to run[.]" *Eastbanc, Inc. v. Georgetown Park Assocs. II, L.P.*, 940 A.2d 996, 1004 (D.C. 2008) (citations and internal quotation marks omitted). "[A]n aggrieved party also may be entitled to sue prior to breach if the other party has anticipatorily repudiated the contract." *Id.* "For a repudiation of a contract by one party to be sufficient to give the other party the right to recover for breach, the repudiating party must have communicated, by word or conduct, unequivocally and positively its intention not to perform." *Order of AHEPA v. Travel Consultants, Inc.*, 367 A.2d 119, 125 (D.C. 1976).

Appellants contend that the anticipatory breach doctrine does not apply to unilateral contracts in which one party has completed performance and the only remaining obligation is payment at a certain time. "A unilateral contract results from an exchange of a promise for an act, while a bilateral contract results from an exchange of promises." 1 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 1.17 (4th ed. 1990). Appellants assert that the agreement with appellee was converted to a unilateral contract "once [appellee] completed its work and/or breached the Prime Contract[.]" The trial court, however, correctly noted that appellee had presented evidence that appellants had prevented appellee from completing installation of the floor. Appellants also acknowledged in their closing argument that the work was not completed. As such, there was evidence from which a reasonable jury could find that the contract remained bilateral and subject to the anticipatory breach doctrine, thus justifying the trial court's denial of appellant's motion for judgment on appellee's anticipatory breach of contract claim. Moreover, appellee's breach could not convert the bilateral contract to a unilateral contract. The jury found that appellee breached the Prime Contract via their failure to pay Rust-Oleum to remove the mechanic's lien. Because this breach did not defeat the essential purpose of the contract, which was to install a decorative floor in exchange for payment, this breach is properly deemed a simple

breach that would not negate the remaining performance obligations.[15] *See Neely v. White*, 177 Va. 358, 367 (1941) ("But a failure of an unsubstantial part of the consideration for a contract is not such an excuse. Such failure of the consideration is merely a ground for an abatement of the damages.").

## IV.

Appellants also filed a fee petition seeking $659,880.25 in attorney's fees and $26,641.43 in costs. Under the Prime Contract, appellants are entitled to indemnification from appellee for the following:

> [A]ll claims, actions, liabilities, damages, losses, costs and expenses (including attorney's fees) arising out of or incidental to: (i) the performance by the Independent Contractor of any duties and obligations pursuant to this Agreement, or arising out of any negligent acts, errors and omissions by the Independent Contractor in the performance of Scope of Work under this Agreement;

---

[15] Although the trial court instructed the jury on the difference between material and simple breach, the verdict form as written only permitted the jury to find a material breach. The verdict form should have separated out the two possible bases upon which the jury could find appellee in breach (defective floor, imposition of the Rust-Oleum mechanic's lien) as the former would constitute a material breach and the latter, a simple breach. However, although the jury checked "yes" when asked if appellee "materially breached the Prime Contract[,]" the amount of the setoff to compensate for appellee's breach demonstrates that the jury actually found a simple breach related to the imposition of the Rust-Oleum lien. See *supra* note 5.

and/or (ii) the negligent acts or omission of the Independent Contractor, its employees or agents.

The trial court, however, limited the claims for fees and costs to those fees and costs associated with defending against the Rust-Oleum lien.

The determination of the reasonableness of attorney's fees is within "the sound discretion of the trial court." *Fed. Mktg. Co. v. Va. Impression Prods. Co.*, 823 A.2d 513, 530 (D.C. 2003) (quoting *Frazier v. Franklin Inv. Co.*, 468 A.2d 1338, 1341 (D.C. 1983)). In interpreting contractual provisions for attorney's fees, courts "normally limit such a right to the successful or prevailing party." *Fleming v. Carroll Publ'g Co.*, 581 A.2d 1219, 1228 (D.C. 1990). "[W]here a plaintiff has achieved only partial or limited success, the judge may adjust the fee to reflect the level of success, and in that regard should consider (1) whether the plaintiff failed to prevail on claims that were unrelated to the claims on which he succeeded, and (2) whether the plaintiff achieved a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Fred A. Smith Mgmt. Co. v. Cerpe*, 957 A.2d 907, 918 (D.C. 2008) (internal quotation marks, citations, and alterations in original omitted).

Appellants assert that the issues surrounding the Rust-Oleum lien were fundamentally intertwined with the rest of the litigation and that the trial court

erred in asking them to separate the time in their billing records related to the lien, and in limiting their petition to only these fees. Citing to *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983), appellants contend that the court should focus on the overall relief obtained by a party rather than just the hours an attorney spends on the litigation. *Hensley*, however, actually aids appellee in stating that "[w]here [a party] has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee." *Id.* at 440. In the instant matter, determining whether appellee breached the Prime Contract by failing to timely pay Rust-Oleum for their materials had no relationship to the main issues of whether the floor that appellee installed was defective, and whether appellants anticipatorily breached the contract by indicating their intention not to make any of the payments called for under the Prime Contract. Appellants lost on the major issues;[16] the indemnification agreement in the Prime Contract did not entitle appellants to attorney's fees incurred in unsuccessfully defending against claims of their own breach.

Accordingly, the orders on appeal are hereby affirmed.

---

[16] At an April 13, 2017, hearing, the trial court acknowledged that "[appellants] lost on all the disputed issues" and "won on one issue which really wasn't disputed [the Rust-Oleum lien offset] . . . ."