Laura Ann FISHER, et al., Appellants,

v.

Kevin C. BEST, et al., Appellees.

No. 93–CV–1486.

District of Columbia Court of Appeals.

Submitted Dec. 8, 1994.

Decided July 17, 1995.

Harold E. Jordan, Washington, DC, for appellants.

Peter A. Chapin, Washington, DC, for appellees.

Before FERREN and SCHWELB, Associate Judges, and KERN,* Senior Judge.

---

* *Senior Judge* REILLY was originally a member of the panel. Upon his death, *Senior Judge* KERN was selected by lot to replace him.

SCHWELB, Associate Judge:

This personal injury case arises out of a rear-end collision involving two automobiles. The front vehicle was operated by plaintiff Kevin C. Best, an officer of the Metropolitan Police Department. Best's passengers and co-plaintiffs were his mother, Louberta R. Best, and his then-fiancee, Sherry A. Stinson. The rear car was operated by defendant Laura Ann Fisher and registered in the name of Ms. Fisher's father and co-defendant, Ronald K. Fisher.

The controversy went to trial twice. At the conclusion of the first trial, the jury returned a verdict in favor of the Fishers. The plaintiffs filed a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. The judge granted the motion for a new trial. At the second trial, a jury found in favor of the plaintiffs and awarded Ms. Stinson $40,000, Officer Best $10,000, and Mrs. Best $10,000. On appeal, Ms. Fisher's sole contention is that the trial judge abused his discretion in granting the motion for a new trial. We disagree and affirm.

## I.

The accident to which this litigation relates took place on June 10, 1989 in the 2800 block of Massachusetts Avenue, N.W., near the entrance to the Rock Creek Parkway. It is undisputed that Officer Best suddenly stopped or slowed down in order to avoid a collision with a vehicle in front of him and that Ms. Fisher struck him in the rear, "totalling" the Fisher car and causing heavy damage to the Best vehicle.

The three plaintiffs provided consistent testimony. None of them was aware of Ms. Fisher's vehicle prior to the collision. Officer Best testified that he had come to rest some three feet behind the car in front of him and that Ms. Fisher's automobile struck him hard in the rear some fifteen to twenty seconds later.

There was substantial testimony, not contradicted during the defense case, to the effect that Ms. Fisher admitted fault on the scene. When the principals got out of their respective vehicles, Ms. Fisher said "don't hit

me" to Officer Best; Mrs. Best reassured her that her son was a police officer and would not harm her. According to Mrs. Best, Ms. Fisher stated that "she was looking in the mirror and when she got up she was too close that she couldn't stop." Ms. Stinson testified that Ms. Fisher said that

> she was on her way to work and that she was running a little late and that she had [taken] her eyes off the road and was looking somewhere and [that when] she looked back it was too late for her to stop.

At the hospital to which all four principals were taken, a police officer who investigated the accident gave Ms. Fisher a ticket for "following too close." Ms. Fisher signed the ticket and paid the $25 fine.

Ms. Fisher was called as an adverse witness by the plaintiffs, and she also testified as the sole witness for the defense. The gravamen of her testimony was as follows:

> Mr. Best had switched lanes in front of me and we were slowing down preparing to come to a stop at the right lane ahead or to slow down for the traffic ahead. At that point I was going about 15 miles an hour and I had put my clutch in because I had a manual transmission and I was braking. And I put my car into second gear because the traffic ahead of him had continued to— or it started to move through and turned into the parkway. And he had, you know, previously braked also, as I was. And then he continued to go. And he slammed on his brakes, I slammed mine, and we had a collision.

Although, during two stints on the witness stand, Ms. Fisher could have contested the plaintiffs' allegation that she had admitted taking her eyes off the road and conceded fault, she never did so. Ms. Fisher testified during the case for the plaintiffs that she did not take her eyes off the road, but the following colloquy ensued:

> Q Isn't it a fact, Ms. Fisher, you told both ladies that—
>
> A That isn't true.
>
> Q Let me finish the question and you can answer, okay.
>
> Is it not a fact that you told both ladies that you looked in the mirror and took

your eyes off the road and all of a sudden this accident happened?

A I had to look in my mirror.

Q You had no reason to look in your rear view mirror?

A No, I didn't.

If the record on this point merited clarification, none was provided during the defense case, and the testimony as to Ms. Fisher's admission of fault was never really denied.[1]

## II.

The jury, as we have noted, returned a verdict at the first trial in favor of Ms. Fisher and against all three plaintiffs. The plaintiffs filed post-trial motions and, on November 15, 1991, the judge issued a comprehensive oral opinion from the bench and ordered a new trial. The judge noted that in some sixty trials on his civil calendar over a period of approximately two years, he had not set aside a single jury verdict. He recognized that such an action should be taken "very very sparingly," but he explained that the court had the authority to set aside a verdict which was against the great weight of the evidence. The judge observed that Mrs. Best and Ms. Stinson were passengers who "were not guilty [sic] of any contributory negligence," and that therefore the only possible basis for the verdict was a finding that Ms. Fisher was not negligent. Such a finding, according to the judge, was "against the great weight of the evidence," because Ms. Fisher had presented no testimony tending to show that she had exercised due care. The judge stated, in pertinent part, as follows:

Now, the stopping suddenly of the first car may give rise to contributory negligence on the part of that driver, perhaps so. The fact that one is following another car and it suddenly stops and, boom, you plow into them I think, absent any other explanation, and there was none here, seems to me to indicate that the great weight of the evidence supports the conclusion that this driver, Ms. Fisher, was simply following too closely, which was negligent, and that her negligence was a proximate cause of this collision.

\* \* \* \* \* \*

Now, how the jury got derailed on this one I do not know. It may be, as I said, that they misunderstood the concept of contributory negligence.

\* \* \* \* \* \*

There is another component of this which I think may have affected things, and that is that in this particular trial [counsel for the defendants] had a very appealing kind of low-key, ingratiating style, and [counsel for the plaintiffs], for whatever reason, was rather heavy-handed and a little abrasive particularly in his cross-examination of the defendant. I think that because she was sort of a nice, appealing young woman and it looked like [plaintiffs' counsel] was bearing down on her a little hard, I think some of that may have influenced the result.

The defendant filed a premature notice of appeal from the order granting a new trial, but that appeal was dismissed by stipulation.[2] After the plaintiffs prevailed at the second trial, the defendants filed the present ripe and timely appeal.[3]

---

1. Although Ms. Fisher stated that "[t]hat isn't true," no complete question was pending and there is no readily understandable antecedent to the word "that."

At trial, Ms. Fisher also acknowledged her deposition testimony to the effect that, after the accident, her reason for asking Officer Best not to hit her was her belief that he would be upset. She entertained that belief "[b]ecause I'd be angry if somebody hit me." Ms. Fisher further testified that she paid the fine on the ticket "because the officer told me it was my fault *and I didn't know otherwise.* And rather [than] waiting for trial and fighting it, I thought a $25 ticket— just paying it would have been the much easier thing to do." (Emphasis added).

2. An order granting a new trial is not a final order and is therefore not appealable. *Brickman v. American Bridge Fabricators, Inc.,* 124 A.2d 852 (D.C.1956) (per curiam).

3. "The grant of a new trial was not a final and appealable order, but if there had been a new trial with an adverse result to appellants, they could have appealed from the judgment in the second trial and assigned as error the grant of the new trial." *Desmond v. Robertson,* 211 A.2d 775, 776 (D.C.1965). In this case, the Fishers ultimately followed the very course of action approved by the court in *Desmond.*

## III.

Rule 59(a)(1) of the Superior Court's Civil Rules provides that the court may grant a new trial "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States or of the District of Columbia." Trial judges have traditionally had "the power *and duty* to grant a new trial if the verdicts were against the clear weight of the evidence, or if for any reason or combination of reasons justice would miscarry if they were allowed to stand." *Eastern Air Lines, Inc. v. Union Trust Co.,* 99 U.S.App.D.C. 205, 210, 239 F.2d 25, 30 (1956) (emphasis added), *cert. denied,* 353 U.S. 942, 77 S.Ct. 816, 1 L.Ed.2d 760 (1957). Accordingly, "[t]he trial court must exercise its discretion in ruling on a motion for [a] new trial when it is claimed that the verdict is against the weight of the evidence." *Johnson v. Bernard,* 388 A.2d 490, 491 (D.C.1978).

 The trial court's discretion in ruling on a motion for a new trial is broad. *Mozie v. Sears Roebuck and Co.,* 623 A.2d 607, 614 (D.C.1993). An order granting such a motion is reviewable only for abuse. *Desmond, supra* note 3, 211 A.2d at 776. The trial judge's latitude in passing upon a motion for a new trial is greater than that accorded to an appellate court. *Tihay v. Aurora City Lines,* 79 Ill.App.2d 107, 223 N.E.2d 171, 174 (1967); *see* 66 C.J.S. *New Trial* § 201, at 497 & n. 71 (1950 & Supp.1994).[4]

 As the judge explicitly noted in delivering his oral decision, a trial court should exercise great restraint in setting aside the verdict of a jury. It is important to recognize, however, that ordering a new trial is quite different from entering judgment notwithstanding the verdict. In *Etheredge v. District of Columbia,* 635 A.2d 908 (D.C. 1993), we recently explained that the judge may not inject his own views of the credibility of witnesses in acting on a motion for judgment n.o.v., but that

the judge was not considering a motion for a new trial; on such a motion, the trial judge need not view the evidence in the light most favorable to the non-moving party. Indeed, the judge can, in effect, be the "thirteenth juror," he may "weigh evidence, disbelieve witnesses, and grant a new trial even when there is substantial evidence to sustain the verdict." *Slatton v. Martin K. Eby Constr. Co., Inc.,* 506 F.2d 505, 508 n. 4 (8th Cir.1974) (citations omitted), *cert. denied,* 421 U.S. 931, 95 S.Ct. 1657, 44 L.Ed.2d 88 (1975).

*Id.* at 917 n. 11. Further,

it is the duty of the judge to set aside the verdict and grant a new trial, if he is of the opinion that the verdict is against the clear weight of the evidence, or is based upon evidence which is false, or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict. The exercise of this power is not in derogation of the right of trial by jury but is one of the historic safeguards of that right.

*Eastern Air Lines, supra,* 99 U.S.App.D.C. at 209, 239 F.2d at 29 (quoting *Aetna Casualty & Sur. Co. v. Yeatts,* 122 F.2d 350, 352–53 (4th Cir.1941)); *see also Rich, supra* note 4, 410 A.2d at 534; *Weeda v. District of Columbia,* 521 A.2d 1156, 1160 (D.C.1987).

 Applying these principles to the facts at hand, it is undisputed that this accident was the result of a rear-end collision in which Ms. Fisher was the operator of the rear vehicle. "[T]he primary duty to avoid collision as between [the] motorist ahead and the motorist following lies with the motorist behind...." *Pazmino v. WMATA,* 638 A.2d 677, 679 (D.C.1994) (quoting *Price v. Derrickson,* 89 A.2d 231, 232 (D.C.1952)); *accord, Akers v. Tomlinson,* 222 A.2d 644, 645 n. 2 (D.C.1966) (citations omitted); *see also Felder v. City of Tacoma,* 68 Wash.2d 726, 415 P.2d 496, 497 (1966). A collision does not necessarily imply negligence on the rear driver's part, *Cellini v. Moss,* 98 U.S.App. D.C. 114, 115, 232 F.2d 371, 372 (1956); *Ak-*

---

4. The standard of review of an order setting aside the verdict of a jury and granting a new trial is less deferential than the standard applied to an order sustaining the verdict. *See, e.g., Rich v. District of Columbia,* 410 A.2d 528, 535–36 (D.C.1979). The trial judge recognized, however, that his authority to order a new trial on the ground that the verdict was against the clear weight of the evidence must be exercised "very very sparingly."

ers, *supra,* 222 A.2d at 645 n. 2, and the issue is ordinarily for the jury. *Pazmino, supra,* 638 A.2d at 679. Nevertheless, it has been held that "[i]n the absence of an emergency or unusual conditions, the following driver is negligent if he collides with the forward vehicle." *Felder, supra,* 415 P.2d at 497 (citations omitted). "[T]he nature of a rear-end collision is such that it alone may suggest negligence of the driver of the striking vehicle to a degree that [s]he may be found negligent as a matter of law." *Bowe v. Fredlund,* 295 Minn. 103, 203 N.W.2d 327, 331 (1972) (citations omitted).

█ Where a lawfully stopped vehicle is struck by another car from the rear, there is a rebuttable presumption that the approaching vehicle was negligently operated. *Dornton v. Darby,* 373 F.2d 619, 621 (5th Cir. 1967). Moreover, where (as here) the collision caused substantial damage to both vehicles, one may reasonably infer that the rear car was being operated at a higher rate of speed than the exercise of ordinary care would permit under the circumstances. *Taylor v. Fitzpatrick,* 235 Ind. 238, 132 N.E.2d 919, 922 (1956). In light of these principles, directed verdicts against the rear driver have been sustained under circumstances no more favorable to the plaintiffs than the situation presented here. *See, e.g., Wright v. Rickenbacher Transp., Inc.,* 138 F.2d 414 (6th Cir. 1943) (per curiam); *Aemisegger v. Herman,* 215 Mont. 347, 697 P.2d 925, 926–27 (1985).[5] The trial judge could therefore rationally conclude, the jury's verdict notwithstanding, that no unusual condition relieving Ms. Fisher of her "primary" duty existed in this case.

Moreover, there was testimony by two of the plaintiffs, uncontested by the defense, that Ms. Fisher admitted at the scene of the accident that she had taken her eyes off the road and that she therefore could not stop in time. Given her effective admission of fault, and the inference logically arising from the

nature of the collision, the judge did not abuse his discretion when he concluded that a judgment in her favor, which would leave the three plaintiffs (including two who were faultless passengers) without recourse against her, constituted a miscarriage of justice warranting intervention on his part.[6]

Our dissenting colleague suggests that the judge's conclusion that Ms. Fisher was "following too closely" is not supported by the record. He points to the testimony of Officer Best and his mother that the collision occurred fifteen to twenty seconds after Best came to a stop. It is true that if the collision occurred so long a period after Best stopped his car, Ms. Fisher must initially have been a considerable distance behind him. The judge could reasonably conclude, however, that this estimate was far too high (in the context of Ms. Fisher's testimony and all parties' description of the traffic situation) and that Ms. Fisher was too close to the Best car considering the speed at which she was travelling and the surrounding circumstances. *See* 18 DCMR § 2201.4 (1987) (unlawful to follow another vehicle "more closely than is reasonable and prudent, having due regard for the speed of the vehicle being followed, the traffic upon the highway, and the condition of the highway"); *Pazmino, supra,* 638 A.2d at 679.

In any event, "[m]otorists have a duty both to maintain control of their vehicles and to maintain a proper lookout." *Motton v. Travelers Ins. Co.,* 484 So.2d 816, 822 (La.Ct.App. 1986). If the plaintiffs' uncontradicted testimony regarding Ms. Fisher's admissions is credited—and the judge had a right to credit it, *see Etheredge, supra,* 635 A.2d at 917 n. 11—then Ms. Fisher did neither. If the collision in fact occurred fifteen seconds after Officer Best stopped his car, we discern no explanation in the record as to how Ms. Fisher, who admitted fault, could have been

---

**5.** *See generally* Annotation, *Driver's failure to maintain proper distance from motor vehicle ahead,* 85 A.L.R.2d 613 (1962 & Supps.1991 & 1994).

**6.** In addition to her admissions on the scene, Ms. Fisher also accepted the ticket and paid the fine, in part because, according to her own testimony, she had no basis for disbelieving the investigat-

ing officer's statement that she was at fault. In light of our disposition of the appeal on other grounds, we need not and do not decide whether her testimony about the ticket and her payment of a small fine, see note 1, *supra,* should be accorded any legal significance. *Cf. Morris v. Rasque,* 591 A.2d 459 (D.C.1991).

exercising due care when she struck the vehicle ahead of her with sufficient force to "total" her own car.

The Fishers rely heavily on *Akers v. Tomlinson, supra,* but that decision does not support their position. In *Akers,* this court held that the trial judge had not erred by finding that the driver of the rear car in a rear-end collision case was not negligent. The court reasoned that "[s]ince we cannot say that the facts in the instant case inescapably lead to but one reasonable conclusion, the decision of the trial court must be upheld." 222 A.2d at 646. No question of the trial court's authority to order a new trial was presented, however, and the scope of this court's review of the judge's factual determinations was necessarily deferential. *See* Super.Ct.Civ.R. 52(a). Moreover, *Akers* differs from this case in the critical respect that there was evidence here that the driver of the rear car admitted that she was at fault.

## IV.

For the foregoing reasons, we hold that the trial judge did not abuse his discretion in ordering a new trial. Accordingly, the judgment appealed from is hereby

*Affirmed.*[7]

KERN, Senior Judge, dissenting:

I am unable to agree to affirm the trial court's order overturning the jury's verdict in favor of appellant/defendant and granting a new trial which resulted in a new verdict in favor of appellee/plaintiff. In my view, the record reveals that the conscientious trial judge "misremembered" the evidence and instructions presented to the jury at the September trial—which found for the appellant/defendant—when he ruled in November, without a transcript, that the jury's verdict was "against the great weight of the evidence," (Supp.R. #1, at 5) and ordered a

new trial. In addition, I note certain factors which went into the trial court's determination that I deem inappropriate. Accordingly, I conclude the trial court abused its discretion in overturning the jury's verdict and ordering a new trial. *Desmond v. Robertson,* 211 A.2d 775, 776 (D.C.1965); *Rich v. District of Columbia,* 410 A.2d 528, 535–36 (D.C. 1979).

The record reflects that the theory of the trial court in overturning the jury's verdict in favor of the defendant was "that the great weight of the evidence supports the conclusion that this driver, Ms. Fisher [the defendant], was simply following too closely, which was negligent, and that her negligence was a proximate cause of this collision." (Supp.R. #1, at 8)

The trial court went on to state (Supp.R. #1, at 9):

As I remember the testimony, there was *no* indication that she had allowed a proper interval of space between herself and the car in front. All of a sudden we have the very occurrence for which following too closely is the explanation. I think in this case it was precisely the explanation, and that *is* what the great weight of the evidence, I think indicated. [Emphasis added.]

The transcript of the trial which this court has before it and which the trial court did not have the advantage of reviewing before ruling reflects quite the opposite.

Thus, plaintiff testified (Tr. 46–47):

Traffic was medium to heavy. And traffic was moving and then all of a sudden it stopped so I stopped. If I didn't stop I would have hit the car in front of me.

He went on to testify (Tr. 47):

We were sitting there for, I guess, 15 to 20 seconds and then we were hit from the rear by Ms. Fisher.... It was a hard impact.

---

7. In light of our disposition, we do not reach the question whether a new trial could properly be ordered because the lawyer for the losing plaintiffs may have antagonized the jury by bullying Ms. Fisher on the witness stand. *Cf. Cordero v. United States,* 456 A.2d 837, 845–46 (D.C.1983) (Kern, J., dissenting) (recalling the presumably apocryphal child "who murdered his parents and then sought mercy on the ground [that] he was

an orphan"). The jury is, of course, required to decide the case on the basis of the law and the evidence, regardless of the personalities of counsel. We are confident that the judge based his decision on his recollection of the record before him, and that his comments about counsel's manner reflected no more than an interest in ascertaining why the jury had returned what he perceived to be an illogical verdict.

On cross-examination, the plaintiff testified (Tr. 63):

> When I stopped my car it was few seconds. She didn't hit my car as soon as it stopped. We were sitting there for a while and then she impacted my car.

The plaintiff's mother who was a front-seat passenger in plaintiff's auto also testified (Tr. 74):

> My son stopped and then ... about 15 or 16 seconds or something [defendant] came along and hit us in the rear.

This witness asserted in her testimony (Tr. 76) that the defendant told her after the accident that "she [the defendant] was looking in the mirror and when she got up she was too close that she couldn't stop."

The plaintiff's fiance who was riding in the back seat of his car at the time of the accident testified (Tr. 95–96) that after the accident the defendant "said she was on her way to work and that she was running a little late and that she had took her eyes off the road and was looking somewhere and she looked back and it was too late for her to stop." This witness on cross-examination denied (Tr. 106) that the plaintiff had stopped quickly.

A fair reading of the transcript (and certainly a reasonable hearing of the testimony by the jurors at trial) was that the plaintiff's case rested upon the theory that the defendant had been inattentive to her driving and such inattention caused the accident. Indeed, the plaintiff's attorney called the defendant as an adverse witness and questioned her as follows (Tr. 122):

> Is it not a fact that you told both ladies [plaintiff's passengers] that you looked in the mirror and took your eyes off the road and all of a sudden this accident happened?

The defendant responded:

> I had to look in my mirror.

Whereupon plaintiff's counsel asked:

> You had no reason to look in your rear view mirror?

The defendant answered (Tr. 123):

> No, I didn't.[1]

It is interesting to note the trial court's instruction to the jury (Tr. 170):

> Now, let me finally say in this matter of negligence that the mere fact that an accident happened does not necessarily mean that any party to the action was negligent. On the contrary, the legal presumption is that reasonable care was exercised by all parties. The burden of proof is upon the party charging negligence....

The court instructed the jury (Tr. 173):

> So it's up to you to decide under the facts of this particular case who was negligent with respect to the accident, if anyone was.
>
> And in connection with that you may consider that the following driver has the primary duty to avoid the collision but it does not necessarily follow that because there was a collision the following driver must automatically have been at fault.

The record simply does not support the trial court's determination that "the great weight of the evidence" was that the defendant was following too closely. In addition, the trial court referred to certain other factors that caused it to overturn the jury's verdict and order a new trial. Thus, the court stated (Supp.R. # 1, at 17):

> I wanted to make clear that I don't set aside these things willy-nilly, I haven't done it up to now. *I think this was a fluke, explained largely by the personality of the advocate and not by the evidence in the case.* I think the evidence was overwhelming that this driver was following too closely, and that is negligence. [Emphasis added.]

Interestingly, the trial court in making its ruling (1) declined the offer of defendant's counsel to allow him to order a copy of the transcript so as to "be precise as to what was said about following distance and speed ..." (Supp.R. # 1, at 15), and (2) factored into its determination to grant a new trial certain

---

1. The plaintiff's attorney had advised the trial court prior to trial concerning the accident's cause (Tr. 11):

> We're talking about an individual [the defendant], in my view, who's not paying attention. That's why this accident ... happened.

other factors that are troubling. Thus, the court stated (Supp.R. # 1, at 9):

> There is another component of this which I think may have affected things, and that is that in this particular trial ... [defendant's attorney] had a very appealing kind of low-key, ingratiating style, and ... [plaintiff's attorney], for whatever reason, was rather heavy-handed and a little abrasive particularly in his cross-examination of the Defendant. I think that because she was sort of a nice, appealing young woman and it looked like ... [plaintiff's attorney] was bearing down on her a little hard, I think some of that may have influenced the result.

The court went on to state (Supp.R. # 1, at 10):

> I would be somewhat loathe to disturb this verdict if this had been a three-week trial, very expensive, all kinds of witnesses flown in from all over the country, and the cost of a retrial was going to be very substantial for all concerned.
>
> That is not true here. This was an extremely short trial; I would say it took about a day or a day and a half.

It is troublesome that (a) the effectiveness of the respective trial attorneys, (b) the appealing presence of one of the parties, and (c) the length of the trial appear to have played some part in the court's determination to overrule the jury's verdict and require the parties to go to trial again.[2]

In sum, justice was best served in my view by having a jury composed of a cross-section of the community spend a day and a half

focusing on the particular facts and circumstances here, viewing the witnesses and weighing their testimony, and then and there engaging in deliberation before rendering a collective judgment on the cause of the rear-end collision, as opposed to having a busy trial judge, who admittedly was "pressed for time" (Supp.R. # 1, at 2), render his verdict based upon recollection, not record, some two months after the trial.[3] Accordingly, I respectfully dissent.

---

**2.** Apparently, the trial court also factored into its determination that the evidence of defendant's negligence was so substantial as to require a new trial the further evidence that the defendant received and did not contest a ticket for the traffic offense of following too closely. (Supp.R. # 1, at 8) However, the defendant gave an explanation which the jury apparently accepted but the judge did not.

Defendant at trial explained (Tr. 129) that she was given a traffic ticket by the plaintiff's fellow police officer for following too closely, which she testified she signed "when he told me to sign it."

Defendant further explained (Tr. 148–49) that the officer who knew the plaintiff and responded to the scene of the accident "told me that he found me at fault for the accident and gave me a ticket for following too closely and told me to

sign it." She testified (Tr. 149) that she was on a stretcher at the scene of the accident "upside down" when signing it. She testified (Tr. 149–50):

> [B]ecause the officer told me that it was my fault and I didn't know otherwise. And rather than waiting for trial and fighting it I thought a $25 ticket—just paying it would have been the much easier thing to do.

**3.** The very fact that this panel cannot agree on the proper inferences to be drawn from the conflicting testimony as set forth in the record also is a further reason why the outcome of this case should have been left to the jury, which heard the witnesses and decided the conflicts in testimony at the time.