*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 22-CV-0595

FRENNIEJO D. NIXON, APPELLANT,

v.

GIOVANNI IPPOLITO, *et al.*, APPELLEES.

Appeal from the Superior Court of the
District of Columbia
(2021-CA-001757-V)

(Hon. Hiram E. Puig-Lugo, Trial Judge)

(Argued December 6, 2023                              Decided August 22, 2024)

*Shaketta A. Denson*, with whom *Michael D. Reiter* was on the brief, for appellant.

*Diana Kobrin* was on the brief and argued the case for appellee Gustave K. Etile. After argument, *Yosef Kuperman* was substituted as counsel.

*Michael J. Carita* for appellee National General Assurance Company.

*Jack D. Lapidus* was on the brief and argued the case for appellee Geico Casualty Insurance Company. After argument, *James M. Brault* was substituted as counsel.

*Alane Tempchin*, with whom *Anne K. Howard* was on the brief, for appellee Abron Deer.

*Jennifer L. Servary* for appellee Giovanni Ippolito.

Tyrese White, *pro se.*

Donnita Bennett, *pro se.*

Before EASTERLY, HOWARD, and SHANKER, *Associate Judges.*[*]

SHANKER, *Associate Judge*: In 2018, appellant Frenniejo Nixon was riding as a passenger in a car driven by appellee Gustave Etile when their car was struck from behind in a multiple-vehicle collision. The four cars involved were traveling in the same lane on Interstate 295, with Mr. Etile leading the line. The cars behind Mr. Etile were driven by, in the following order, appellees Tyrese White, Abron Deer, and Giovanni Ippolito. Ms. Nixon sought to recover damages for personal injuries from the accident and filed a negligence claim against Messrs. Etile, Deer, and Ippolito, and a breach-of-contract claim against Geico and National General Assurance for uninsured motorist benefits on account of Mr. White's negligence. The trial court granted summary judgment for the defendants against Ms. Nixon, concluding that Ms. Nixon's interpretations of the evidence were too speculative as a matter of law to support a determination that Messrs. Etile, Deer, White, and Ippolito were negligent. We affirm in part and reverse in part.

---

[*] Associate Judge AliKhan was originally assigned to this case. Following Judge AliKhan's appointment to the U.S. District Court for the District of Columbia, effective December 12, 2023, Judge Easterly has been assigned to take her place on the panel.

## I.   Background

## A.   Factual Background

The following facts are derived from the trial court's order or appear to be undisputed.[1] On the evening of July 4, 2018, a four-car chain of collisions occurred on Interstate 295. The drivers involved were traveling in the same lane in the following order: (1) Mr. Etile, (2) Mr. White, (3) Mr. Deer, and (4) Mr. Ippolito.

Mr. Etile had been driving, with Ms. Nixon in the passenger seat, toward Washington, D.C., to watch the Independence Day fireworks at the National Mall. A car in an adjacent lane abruptly cut in front of Mr. Etile, prompting Mr. Etile to begin braking. In response to Mr. Etile's deceleration, Mr. White began braking. Mr. Deer saw Mr. White's brake lights turn on but failed to stop his car in time and consequently rear-ended Mr. White. After Mr. Deer rear-ended Mr. White, Mr. Ippolito immediately rear-ended Mr. Deer. Ms. Nixon had no personal knowledge as to the order or number of collisions behind her but felt one impact to

---

[1] The trial court did not specifically identify the undisputed facts on which it relied when granting summary judgment. The appellate record, however, is sufficiently developed for our review and we proceed with our independent assessment of the record, *see infra* Part III.

the rear of the car she was in (presumably from Mr. White's car, although Mr. White disputes that), which resulted in her alleged injury.

## B.     Procedural History

In 2021, Ms. Nixon filed a negligence action against Messrs. Etile, Deer, and Ippolito.[2] She did not file an action against Mr. White, who was uninsured at the time. Instead, Ms. Nixon included a breach-of-contract claim against Geico and National General, claiming that they failed to provide her benefits under her uninsured motorist coverage policy for losses she suffered because of Mr. White's negligence.[3]

Messrs. Etile, Deer, and Ippolito moved for summary judgment pursuant to Super. Ct. Civ. R. 56, each arguing that Ms. Nixon failed to establish proximate cause. Geico also moved for summary judgment, arguing that because the record

---

[2] In the same complaint, Ms. Nixon filed a claim against Anna Chayka for negligently entrusting Mr. Ippolito to drive her vehicle. We dismissed Ms. Chayka as an appellee after Ms. Nixon "failed to raise any error as to her dismissal by the trial court." *Nixon v. Ippolito*, No. 22-CV-0595 (D.C. Jan. 13, 2023) (order).

[3] Geico, in accordance with Super. Ct. Civ. R. 14, brought a third-party complaint against Mr. White, asserting that if Ms. Nixon recovered uninsured motorist benefits from Geico due to the negligence of Mr. White, then Geico was entitled to compensation from him for any benefits that Geico was required to pay. Geico filed the same claim against the owner of the car that Mr. White drove, appellee Donnita Bennett. Mr. White and Ms. Bennett did not submit a brief in this court.

did not support an inference that Mr. White was driving negligently, Ms. Nixon's uninsured motorist claim against Geico failed as a matter of law. National General filed in support of Geico's motion, stating that if the trial court dismissed the claim against Geico, it would have to dismiss Ms. Nixon's claim against National General on the same ground.

Ms. Nixon opposed, arguing that disputed issues of material fact resulting from conflicting deposition testimony concerning how many impacts occurred and in what order precluded summary judgment.

In a written order, the trial court granted each summary judgment motion.[4] The court stated that Ms. Nixon's inability to "point to any specific evidence of responsibility" and lack of "personal knowledge as to the order of impacts that occurred behind her" meant that she could not prevail as a matter of law. The court noted that Ms. Nixon "only provided speculative testimony of the possibility of number and order of impacts" leading to her injury and determined that this testimony "provide[s] no information at all about who may or may not have been negligent." Thus, the trial court ruled that Ms. Nixon failed to demonstrate genuine disputes of material fact regarding her negligence claims against Messrs. Etile, Deer,

---

[4] Mr. Ippolito and Ms. Nixon requested a hearing, but the trial court decided the motions on the briefs.

and Ippolito, and granted their summary judgment motions. Finding that there was no evidence supporting an inference of Mr. White's negligence, the court also granted summary judgment for Geico and National General.

Ms. Nixon filed a motion to alter or amend the judgment under Super. Ct. Civ. R. 59(e), arguing that the court committed an error of law in dismissing her complaint. The court denied Ms. Nixon's motion.

This appeal followed.

## II. Standard of Review

We review a grant of summary judgment de novo and apply the same standard used by the trial court. *Mancuso v. Chapel Valley Landscape Co.*, No. 22-CV-0298, 2024 WL 3448356, at *3 (D.C. July 18, 2024). "Under this standard, 'the moving party has the burden of demonstrating that there is no genuine issue of material fact, after the evidence and all inferences from the evidence are drawn in favor of the non-moving party.'" *Id.* (alteration omitted) (quoting *Onyeoziri v. Spivok*, 44 A.3d 279, 284 (D.C. 2012)). "[T]he role of this court is not to resolve factual issues as factfinder, 'but rather to review the record to determine if there is a genuine issue of material fact on which a jury could find for the non-moving party.'" *Id.* (quoting *Holland v. Hannan*, 456 A.2d 807, 814-15 (D.C. 1983)). Thus, "we will reverse the

grant of summary judgment 'if an impartial trier of fact, crediting the non-moving party's evidence, and viewing the record in the light most favorable to the non-moving party, may reasonably find in favor of that party.'" *Id.* (quoting *Tolu v. Ayodeji*, 945 A.2d 596, 601 (D.C. 2008)).

## III.   Analysis

Ms. Nixon argues that the trial court improperly granted summary judgment against her because (1) there are genuine disputes of material fact concerning the collision chain and (2) several theories of causation are reasonably supported by the record.[5]

We mostly agree.  The basis for the trial court's ruling was that Ms. Nixon failed to establish that any driver had proximately caused her injuries, because she could not point to any specific evidence of responsibility and did not have any personal knowledge as to the sequence of the collisions that occurred behind her. But the absence of such direct personal knowledge is not surprising, or dispositive,

---

[5] Ms. Nixon's opening brief mentions the trial court's denial of her Rule 59(e) motion to alter or amend the judgment but does not develop an argument that the trial court erred in denying the motion.  Accordingly, we do not address the issue. *See Wagner v. Georgetown Univ. Med. Ctr.*, 768 A.2d 546, 554 n.9 (D.C. 2001) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (quoting *United States v. Zannino*, 895 F.2d 1, 16 (1st Cir. 1990)).

in a rear-end collision and, on this record as we view it, Ms. Nixon is entitled to a determination of the facts by a factfinder. Based on our review of the record, we conclude that genuine issues of material fact exist concerning whether negligence by Messrs. White, Deer, and/or Ippolito proximately caused Ms. Nixon's injuries. We conclude, however, that Mr. Etile did not breach his duty of care as a matter of law; therefore, we do not reach the issue of proximate cause as to him. Accordingly, we reverse the grant of summary judgment as to all appellees except for Mr. Etile and remand for further proceedings.

### A. Legal Background

"To establish a negligence claim in the District of Columbia, a plaintiff must demonstrate that: (1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached that duty, and (3) the breach of duty proximately caused damage to the plaintiff." *Mancuso v. Chapel Valley Landscape Co.*, No. 22-CV-0298, 2024 WL 3448356, at *3 (D.C. July 18, 2024) (internal quotation omitted).

As a general rule, "the primary duty to avoid collision as between motorist ahead and the motorist following lies with the motorist behind." *Pazmino v. Washington Metro. Area Transit Auth.*, 638 A.2d 677, 679 (D.C. 1994) (internal quotation omitted). This principle, however, "does not warrant a finding of liability as a matter of law and a duty of care rests of course on both motorists." *Id.* The

driver of a following car must "exercise reasonable care to avoid injuries" and "has a duty to keep a lookout and to observe the movements of vehicles ahead" and "shall not follow another vehicle more closely than is reasonable and prudent." *Id.* (internal quotation omitted). To establish a prima facie case of negligence, the plaintiff must present evidence that the following driver breached their duty to exercise reasonable care or otherwise violated District of Columbia traffic regulations. *See id.* at 679-81 (noting that a motorist's duties on the road "are reflected in the District's traffic regulations").

Our negligence cases have described proximate cause as having two components: a cause-in-fact element and a foreseeability element. *Mancuso*, 2024 WL 3448356, at *3. A negligent act or omission is the cause-in-fact of harm if it "'is a substantial factor in bringing about the harm.'" *Id.* at *4 (quoting Restatement (Second) of Torts § 431 (Am. L. Inst. 1965)); *Majeska v. District of Columbia*, 812 A.2d 948, 951 (D.C. 2002). Under the foreseeability element of proximate cause, "a defendant may not be held liable for harm actually caused where the chain of events leading to the injury appears 'highly extraordinary in retrospect.'" *Mancuso*, 2024 WL 3448356, at *4 (quoting *Majeska*, 812 A.2d at 951). Intervening negligence by a third party "does not by itself make the injury unforeseeable," and a defendant will be liable "despite the intervention of another's act in the chain of

causation" if the intervening negligence "should have been reasonably anticipated and protected against." *Majeska*, 812 A.2d at 951 (internal quotations omitted).

This court has recognized that "in the absence of . . . emergency or unusual conditions, the following driver is negligent if he collides with the forward vehicle." *Fisher v. Best*, 661 A.2d 1095, 1099 (D.C. 1995) (internal quotation and alteration omitted). "Where a lawfully stopped vehicle is struck by another car from the rear, there is a rebuttable presumption that the approaching vehicle was negligently operated." *Id.* (citing *Dornton v. Darby*, 373 F.2d 619, 621 (5th Cir. 1967)); *Warrick v. Walker*, 814 A.2d 932, 933 (D.C. 2003) (citing *Fisher*, 661 A.2d at 1099). Thus, "[w]here a party proves the basic facts giving rise to a presumption [of negligence], it will have satisfied its burden of proving evidence with regard to the presumed fact," and the case is then best decided by a jury. *See Warrick*, 814 A.2d at 934 ("Because no evidence was presented at trial that unusual circumstances caused [the defendant] to rear-end the stationary vehicle, such as a bike rider suddenly swerving into his path in the roadway, the trial court erred in taking the case from the jury by directing a verdict for the [defendant] . . . .").

## B.    Discussion

### 1.    Mr. Etile

Ms. Nixon argues that Mr. Etile could be found negligent by a trier of fact because the fact that Mr. Etile had to brake abruptly shows that he failed to "keep[ ] a proper lookout and to react to the changing traffic in a way to avoid a chain collision." Specifically, she contends that Mr. Etile's braking caused Mr. White to slow down, which, in turn, caused Mr. White to be rear-ended by Mr. Deer, ultimately suggesting that Mr. Etile's negligence precipitated the accident. We disagree. Even when viewed in the light most favorable to Ms. Nixon, the evidence would not support a finding by a reasonable factfinder that Mr. Etile breached his duty of care.

The undisputed evidence indicates that Mr. Etile was driving at around fifty-five miles-per-hour, keeping pace with traffic and maintaining about "two car lengths" of distance from the car ahead, when another car, traveling faster than him in an adjacent lane, "suddenly" cut in front of him. To avoid a collision, Mr. Etile began braking to reduce his speed. It is disputed whether Mr. Etile's car simply

slowed or came to a complete stop when it was rear-ended.[6] While he was driving, Mr. Etile was not listening to the radio and was not talking on the phone or to any of the passengers in the car.

As an initial matter, the fact that a chain of collisions occurred behind Mr. Etile is not evidence of his negligence. *See Evans v. Byers*, 331 A.2d 138, 140 (D.C. 1975) ("It is fundamental that the mere happening of an accident . . . does not prove negligence . . . ."); *Pazmino*, 638 A.2d at 679 ("[T]he primary duty to avoid collision as between motorist ahead and the motorist following lies with the motorist behind." (internal quotation omitted)). Moreover, we are unpersuaded that Mr. Etile's braking—in response to a car that had "suddenly" cut him off—supports a finding of negligence when Mr. Etile had been maintaining about two car-lengths of distance behind the car ahead, safely avoided rear-ending the car that unexpectedly sped into his lane, and had not been (as far as the record indicates) distracted while driving.

Ms. Nixon correctly observes that Mr. Etile had a duty to abide by the District's traffic regulations and to "keep a lookout and to observe the movements

---

[6] Although Mr. White maintains that he never struck Mr. Etile's car, it is undisputed that Mr. White was directly behind Mr. Etile in the line of traffic and was unconscious when a car rear-ended Mr. Etile. Drawing all reasonable inferences in favor of Ms. Nixon, the evidence supports a finding that Mr. Etile was rear-ended by Mr. White.

of vehicles ahead." *Pazmino*, 638 A.2d at 679. Under these circumstances, however, there is no basis to conclude that Mr. Etile was at fault for not anticipating another driver's hasty lane change or for rapidly decelerating. For example, there is no testimony that the car in the adjacent lane had its signal on and that Mr. Etile failed to observe it. Absent any evidence that Mr. Etile had to brake sharply because he had been distracted or inattentive, his sudden braking raises no reasonable inference of negligence. *See Evans*, 331 A.2d at 140 (evidence was insufficient to establish a prima facie case of negligence where there was no evidence that defendant who rear-ended another car "was driving at excessive speed, was inattentive to the traffic in front of him, or doing any of the myriad things not expected of a prudent driver"); *Rahimi v. Manhattan & Bronx Surface Transit Operating Auth.*, 43 A.D.3d 802, 803-04 (N.Y. App. Div. 2007) (holding that bus driver was not negligent where it was uncontroverted that another car had cut in front of the bus "at a high rate of speed" and where there was "no evidence that the bus driver created the emergency or could have avoided a collision by taking some action other than stepping hard on his brakes").

Relatedly, the dispute concerning whether Mr. Etile had braked to a complete stop or had simply slowed down is immaterial in this case. Even if Mr. Etile stopped, there is no evidence to support an inference that his stop was unlawful or negligent so as to rebut the presumption that the collision occurred because of the following

driver (Mr. White). *See Fisher*, 661 A.2d at 1099 ("Where a lawfully stopped vehicle is struck by another car from the rear, there is a rebuttable presumption that the approaching vehicle was negligently operated." (citing *Dornton*, 373 F.2d at 621)); *Dornton*, 373 F.2d at 621 (a car is lawfully stopped when it "has stopped . . . to avoid a collision with a car ahead"); 18 D.C.M.R. § 9901.1 (defining a prohibited stopping as "halting a vehicle except to avoid conflict with other traffic").

And even if Mr. Etile's stop was sudden, "a claim that the leading vehicle came to a sudden stop, standing alone, is [generally] insufficient to rebut the inference of negligence caused by the rear-end collision." *Byrne v. Calogero*, 96 A.D.3d 704, 706 (N.Y. App. Div. 2012); *see, e.g.*, *Clampitt v. D.J. Spencer Sales*, 786 So.2d 570, 574 (Fla. 2001) (an abrupt stop by the leading driver does not rebut the presumption of the rear driver's negligence unless it is "at a time and place where it could not reasonably be expected by the following driver" (internal quotation omitted)); *Huntoon v. TCI Cablevision of Colorado, Inc.*, 969 P.2d 681, 687 (Colo. 1998) (en banc) ("A sudden stop may be unwarranted if the evidence suggests it was made without reason, or in an unexpected and uncalled-for location.").[7]

---

[7] Under 18 D.C.M.R. § 2206.2, a driver has a duty to not "stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal . . . to the driver of any vehicle immediately to the rear when there is opportunity to give such

There is no evidence to suggest that Mr. Etile's stop was arbitrary. Furthermore, the evidence shows that the stop occurred "at a place and time where it was reasonably expected"—on a highway during a holiday with, at the very least, moderately-congested traffic. *See Kao v. Lauredo*, 617 So.2d 775, 777 (Fla. Dist. Ct. App. 1993) (plaintiff's sudden stop was reasonably expected "on a heavily congested city street during rush hour in stop and go traffic"); *Taing v. Drewery*, 100 A.D.3d 740, 741 (N.Y. App. Div. 2012) (driver of leading car who was rear-ended entitled to judgment as a matter of law because a sudden stop, without more, failed to raise a triable issue of fact when such stops are foreseeable under prevailing traffic conditions). Thus, Mr. Etile's sudden stop does not rebut the presumption that the rear driver was negligent, and there is no genuine dispute as to whether Mr. Etile was negligent. *See Hill v. Wilson*, 531 N.W.2d 744, 746 (Mich. Ct. App. 1995) (question "concerning whether [leading motorist] stopped or merely slowed" was "of no import" where the evidence failed to support a reasonable inference that leading motorist had been comparatively negligent).

---

signal." The evidence does not establish that Mr. Etile failed to comply with this duty: Mr. White testified that he had noticed that Mr. Etile's car had been slowing down and even described Mr. Etile's deceleration as the kind one might expect in "slow, steady traffic" during "rush hour."

Accordingly, we conclude that Ms. Nixon failed to establish a prima facie case of Mr. Etile's negligence, and we affirm the grant of summary judgment as to Mr. Etile.

### 2. Mr. White

Ms. Nixon argues that the trial court erred in granting summary judgment for Geico and National General—both of which may be liable to pay uninsured motorists benefits to Ms. Nixon if Mr. White was negligent—because the facts gave rise to a rebuttable presumption of Mr. White's negligence. In response, Geico contends that there is no evidence that Mr. White breached his duty of care and that the normal presumption of negligence is inapplicable because of an "unusual condition[ ]"—the accident was caused by Mr. Deer. Similarly, National General argues that Mr. Deer striking Mr. White's car from the rear broke the causal chain between Mr. White's negligence and Ms. Nixon's injury and relieves Mr. White of liability as a matter of law. We are not persuaded by the arguments set forth by Geico and National General.

Although Geico contended at oral argument that we need not reach the proximate cause issue because there is no evidence that Mr. White breached a duty of care, we disagree. Mr. White testified that, in response to the traffic ahead, he began slowing down and left "about a feet [sic] or two" between his car and

Mr. Etile's car. Mr. White maintained that he left enough room between the cars, but a jury could reasonably infer that Mr. White failed to maintain a reasonable following distance. *See* 18 D.C.M.R. § 2201.9 ("The driver of a vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of the vehicles and the traffic upon and the condition of the roadway."). As outlined above, there also is a rebuttable presumption of Mr. White's negligence because the evidence reasonably supports an inference that Mr. White rear-ended Mr. Etile, who was lawfully stopped or slowing down. *See Fisher*, 661 A.2d at 1099.

The question remains whether Ms. Nixon failed to demonstrate proximate cause as a matter of law. National General and Geico argue that Mr. Deer's negligent act broke the causal connection between Mr. White's negligence and Ms. Nixon's injury. We hold that a reasonable factfinder could find both elements of proximate cause satisfied.

First, there is evidence in the record to support a finding that Mr. White's negligence was the cause-in-fact of Ms. Nixon's injury. A factfinder could infer that Mr. White's failure to maintain a reasonable following distance placed his car in a dangerous position with respect to Mr. Etile's car and was a "substantial factor in bringing about the harm." *Mancuso*, 2024 WL 3448356, at *4 (quoting Restatement

(Second) of Torts § 431). In other words, a reasonable factfinder could conclude that Mr. Etile's car would not have been rear-ended but for the insufficient space that Mr. White left between their cars. We disagree with National General that this inference relies on "impermissible guesswork and speculation."

Second, the negligence of Mr. Deer was not so unforeseeable as to cut off Mr. White's liability as a matter of law. National General in essence argues that the negligence of Mr. Deer was a superseding cause. We disagree, as our case law is clear that the intervening negligence of a third party breaks the chain of causation only "if it is not reasonably foreseeable" or "when the sequence of events . . . is highly extraordinary in retrospect." *McKethean v. Washington Metro. Area Transit Auth.*, 588 A.2d 708, 716 (D.C. 1991) (internal quotations omitted); *Mancuso*, 2024 WL 3448356, at *4.

This court has recognized superseding causes in cases when the third party's negligence was "too attenuated" from the defendant's negligence and had "such a predominant effect . . . as to make the effect of the [defendant's] negligence insignificant." *See Mancuso*, 2024 WL 3448356, at *4 (quoting Restatement (Second) of Torts § 443, cmt. d.) (although contractors' negligence created the need to rebuild the garage, they were not involved in the reconstruction, and third party's

redesign, which reduced the size of plaintiffs' parking space, prevented defendant's negligence from being a substantial factor).

To determine whether the defendant's negligence was a substantial factor in causing the plaintiff's injury, this court has also recognized as factors the proximity of time and space of the initial negligence to the injury. *See Sanders v. Wright*, 642 A.2d 847, 849-50 (D.C. 1994) (although defendant's negligence caused the first collision, it was "too remote" from plaintiff's subsequent injury, where after the initial collision, plaintiff had moved completely off the roadway and had stood by his car without harm for five-to-ten minutes before a different car, excessively speeding, sped off the road and struck plaintiff).

Here, construing the facts in the light most favorable to Ms. Nixon, a trier of fact could find that the ongoing negligence of Mr. White—failing to maintain a reasonable following distance—was not "too attenuated" or "too remote" to the ultimate collision with Mr. Etile. Indeed, this case is unlike *Sanders*, where it was clear that the defendant's "initial negligence had come to rest" by the time "an independent intervening cause"—the negligence of another driver—"had taken dominion over the action." *Id.* at 851 (internal quotation omitted).

Accordingly, we are unconvinced that there is anything "highly extraordinary" about collision that occurred here as to deem Mr. Deer's negligence

a superseding cause and absolve Mr. White of liability as a matter of law. *See* Restatement (Second) § 442A ("Where the negligent conduct of the actor creates or increases the foreseeable risk of harm through the intervention of another force, and is a substantial factor in causing the harm, such intervention is not a superseding cause."). We hold, therefore, that the issue of proximate cause is more appropriate for resolution by a trier of fact and reverse the grant of summary judgment in favor of Geico and National General.

### 3.    Mr. Deer

Ms. Nixon appears to set forth two theories of negligence against Mr. Deer: res ipsa loquitur and specific acts of negligence. Mr. Deer contends that res ipsa loquitur is inapplicable because Ms. Nixon cannot establish the doctrine's exclusive-control requirement and also argues that Ms. Nixon's negligence claim against him fails because she cannot establish proximate cause. We hold that res ipsa loquitur does not apply but nonetheless reverse the grant of summary judgment because there is a genuine issue of disputed fact concerning whether Mr. Deer proximately caused Ms. Nixon's injury.[8]

---

[8] Ms. Nixon cites the doctrine of res ipsa loquitur in her arguments pertaining to Messrs. Etile and Deer but raises a res ipsa loquitur argument against Mr. Ippolito

### a.      Res Ipsa Loquitur

Res ipsa loquitur permits a jury to infer negligence from the mere occurrence of the accident.  *See Evans*, 331 A.2d at 140 (where no witnesses testified that defendant was excessively speeding, inattentive, or not otherwise driving prudently, "any inference of tortious conduct on his part would have to depend on the principle of res ipsa loquitur").  "For that reason, it is a powerful doctrine which should be applied with caution in a negligence action . . . ."  *Jones v. NYLife Real Est. Holdings, LLC*, 252 A.3d 490, 501 (D.C. 2021) (internal quotations omitted).  A plaintiff may invoke the doctrine if the undisputed facts establish the following: (1) the accident is of a kind that ordinarily does not occur without negligence; (2) the instrumentality causing the injury was within the defendant's exclusive control; and (3) the plaintiff did not contribute to or cause the accident.  *Sullivan v. Snyder*, 374 A.2d 866, 867-68 (D.C. 1977); *see Evans*, 331 A.2d at 141 ("[T]he principle of res ipsa loquitur can be invoked only if a plaintiff's case establishes certain uncontroverted facts which indicate negligent conduct by a particular party.").

---

only in her reply brief.  "It is the longstanding policy of this court not to consider arguments raised for the first time in a reply brief." *Stockard v. Moss*, 706 A.2d 561, 566 (D.C. 1997).  We also do not address the application of res ipsa loquitur as to Mr. Etile given our conclusion that he was not negligent, *see supra* Part III.B.1, and only discuss res ipsa loquitur in the context of Mr. Deer.

This court has long recognized that a rear-end automobile collision is a kind of accident that is unlikely to occur without negligence, *see, e.g.*, *Sullivan*, 397 A.2d at 867-68; *Andrews v. Forness*, 272 A.2d 672, 674 (D.C. 1971), and it is undisputed that Ms. Nixon did not contribute to the accident. Ms. Nixon may not invoke res ipsa loquitur, however, because the injury-causing instrumentality (Mr. Deer's car) was not necessarily under Mr. Deer's exclusive control.

The exclusive-control requirement serves to ensure a clear connection between the defendant and the harm suffered by the plaintiff. *See Quin v. George Washington Univ.*, 407 A.2d 580, 585 (D.C. 1979); 65A Corpus Juris Secundum Negligence § 826 ("The concept of exclusive control . . . eliminate[s], within reason, all explanations for the injurious event other than the defendant's negligence."). Exclusive control does not necessarily require a showing that no one other than the defendant interacted with the instrument or that there were no other potential causes of the plaintiff's injury. *See Avis Rent-A-Car Sys., Inc. v. Standard Meat Co.*, 288 A.2d 243, 246 (D.C. 1972). The facts must demonstrate that the defendant had "some reasonably current, if not continuous control over the instrumentality" at the time of the injury, *id.*, and that the plaintiff's injury was probably caused by the instrumentality under the defendant's control.

An intervening factor, such as third-party interference or an external condition, that contributed "more probably" to the injury prevents a finding that the defendant had exclusive control. *See District of Columbia v. Singleton*, 41 A.3d 717, 723 (Md. 2012). Because the existence of an intervening factor supplies an alternative explanation for the plaintiff's injury and therefore weakens the likelihood that the accident was solely due to the defendant's negligence, res ipsa loquitur is inapplicable in such a case. *See Rajabi v. Potomac Elec. Power Co.*, 650 A.2d 1319, 1323 (D.C. 1994) ("[I]ntervening causes such as weather and traffic made it impossible for appellants to prove that the District had exclusive control over the street lights." (internal quotation omitted)); *Marshall v. Townsend*, 464 A.2d 144, 146 n.1 (D.C. 1983) (noting that a second plumbing leak was "an even less likely candidate for treatment under *res ipsa loquitur*," because intervention by a plumber to fix a first leak "remove[d] the upstairs apartments from appellees' exclusive control").

Although it is undisputed that Mr. Deer rear-ended Mr. White first and then Mr. Ippolito rear-ended Mr. Deer afterward, the facts reasonably support two possible causes of Ms. Nixon's injury—one where Mr. Deer was in exclusive control of his vehicle and another where he was not. In the first scenario, Mr. Deer began the chain of collisions. He rear-ended Mr. White, who then rear-ended Mr. Etile, injuring Ms. Nixon. Mr. Ippolito may have rear-ended Mr. Deer, but this

had no bearing on the chain of collisions that had already occurred. In the second scenario, Mr. Deer rear-ended Mr. White but this impact did not cause Mr. White to rear-end Mr. Etile. Instead, when Mr. Ippolito rear-ended Mr. Deer, whose car was still in contact with Mr. White's car, that impact from Mr. Ippolito provided enough force to propel Mr. White's car into Mr. Etile's car. Thus, the undisputed facts fail to establish that Mr. Deer necessarily had exclusive control over his car.

Because "res ipsa loquitur can be invoked only if a plaintiff's case establishes certain uncontroverted facts which indicate negligent conduct by a particular party," *Evans*, 331 A.2d at 141, and, here, the record supports two conflicting accounts regarding who was negligent, we hold that Ms. Nixon may not invoke the principle of res ipsa loquitur. *See id.* at 140-41 (holding that res ipsa loquitur could not be invoked against driver of another car who collided with the car in which plaintiff was a passenger because the evidence showed two conflicting accounts concerning which of the two drivers was negligent); *Marshall*, 464 A.2d at 145 (The "plaintiff must establish certain uncontroverted facts in support of the elements of *res ipsa loquitur*." (citing *Evans*, 331 A.2d at 141)).

Having concluded that res ipsa loquitur does not apply,[9] we turn to whether the evidence supports finding a specific act of negligence as to Mr. Deer that proximately caused Ms. Nixon's injury.

"This court permits the plaintiff in a proper case to rely upon both res ipsa loquitur and proof of specific acts of negligence." *Quin v. George Washington Univ.*, 407 A.2d 580, 582 (D.C. 1979). "[T]he introduction of some evidence which tends to show specific acts of negligence on the part of the defendant, but which does not purport to furnish a full and complete explanation of the occurrence . . . does not deprive the plaintiff of the benefit of res ipsa loquitur." *Sullivan*, 374 A.2d at 867 n.1 (D.C. 1977) (quoting W. Prosser, Handbook of the Law of Torts § 40, at

---

[9] There appears to be confusion among the parties about the applicability of res ipsa loquitur when multiple defendants are involved. It is well-recognized that the exclusive-control requirement does not always require control by a single person; res ipsa loquitur may be invoked against multiple defendants who shared joint control over the injury-causing instrumentality. *Greet v. Otis Elevator Co.*, 187 A.2d 896, 898 (D.C. 1963). The concept of joint control recognizes that multiple parties can share the duty to exercise reasonable care over the same instrumentality. *See id.* (res ipsa loquitur applicable against building owner and elevator company because either or both could have had responsibility and control of the elevator at the time of the accident). Thus, res ipsa loquitur may apply against multiple defendants, and "it is for the jury to say whether either or both had control." *Id.*

In any event, contrary to Mr. Deer's contention, joint control is inapplicable here. Although Messrs. Deer and Ippolito each had a duty of care, they did not share control over the alleged injury-causing instrumentality, Mr. Deer's car. As explained above, Mr. Ippolito's rear-end collision into Mr. Deer was an intervening factor that precludes satisfaction of the exclusivity requirement. *See Singleton*, 41 A.3d at 724 (recognizing the negligence of another vehicle as an "intervening act").

232 (4th ed. 1971)). "*Res ipsa loquitur* becomes irrelevant only when the manner in which the defendant was allegedly negligent is completely elucidated . . . and there is nothing left for the jury to infer regarding the cause of the accident." *D.C. Hous. Auth. v. Pinkney*, 970 A.2d 854, 868 (D.C. 2009) (internal quotation omitted).

### b. Specific Act of Negligence

Mr. Deer was driving behind Mr. White and "was attempting to maintain, at least, a car length" of distance from the car ahead but admitted it was a "little bit closer than that." Seeking to change lanes, Mr. Deer "checked [his] right-hand mirror," and then re-focused his sights ahead when he saw that Mr. White's brake lights were on. Mr. Deer "slammed on [his] brakes" but could not avoid colliding with Mr. White's car.

As preliminary matter, the record supports a reasonable inference that Mr. Deer breached his duty of care. Mr. Deer's own testimony that he was traveling at a distance less than a car length from Mr. White's vehicle raises a disputed issue as to whether he had been following too closely or had failed to react to an emergency within a reasonable time. *See Pazmino*, 638 A.2d at 681 (reasonable jury could find driver of the trailing vehicle negligent because he "should have been at a reasonable and prudent distance" behind the leading vehicle, which had been lawfully slowing down, but failed to take "particular caution" to avoid an accident);

*Sullivan*, 374 A.2d at 867 & n.1 (evidence establishing that rear driver had been traveling at thirty miles per hour and was only about seven yards away before braking could support a finding of a specific act of negligence).

Mr. Deer's central argument is that Ms. Nixon failed to establish the "cause-in-fact" component of proximate cause as to him, because no one has direct knowledge that Mr. Deer's rear-impact to Mr. Etile actually caused Ms. Nixon's injury. Mr. Deer overlooks, however, that Ms. Nixon "is not required to prove causation to a certainty" and needs only to present sufficient evidence that Mr. Deer's negligence was a "substantial factor" in bringing about harm to Ms. Nixon. *See Majeska*, 812 A.2d at 951.

Viewing the evidence in the light most favorable to Ms. Nixon, we conclude that there is record evidence to support a finding of cause-in-fact by a reasonable factfinder. That no one has direct knowledge as to whether Mr. White rear-ended Mr. Etile after Mr. Deer rear-ended Mr. White is not fatal to Ms. Nixon's negligence claim. Even though Mr. White lost consciousness after the rear-impact and denies ever striking Mr. Etile's car, because Mr. White's car was only one or two feet away from Mr. Etile's car, a reasonable factfinder could conclude that Mr. Deer's rear-ending of Mr. White caused Mr. White to rear-end Mr. Etile. Alternatively, even if Mr. Deer's initial rear-end impact to Mr. White's car did not precipitate

Ms. Nixon's injury and it was Mr. Ippolito's rear-end impact that provided the additional force necessary to push the cars forward and cause the ultimate impact injuring Ms. Nixon, we think that a reasonable factfinder could find that Mr. Deer's negligence was still a substantial factor in causing the accident.

Thus, there is a disputed issue as to whether the one impact that Ms. Nixon felt was caused by Mr. Deer, and we reverse the grant of summary judgment in his favor.

### 4. Mr. Ippolito

At oral argument, Mr. Ippolito conceded that he breached a duty of care, but he argues, similarly to Mr. Deer, that proximate cause could not be established because no witness knows whether Mr. White's car collided with Mr. Etile's car due to the negligence of Mr. Deer or of Mr. Ippolito. We disagree with Mr. Ippolito that a jury would have to "draw impermissible inferences" to find Mr. Ippolito negligent. As we explained above, the evidence establishes that Mr. Deer was still in contact with Mr. White's vehicle when Mr. Ippolito rear-ended him. A reasonable factfinder could infer that Mr. Ippolito's rear-end impact into Mr. Deer's car provided the force necessary to propel Mr. White's car into Mr. Etile's, making Mr. Ippolito's negligence a substantial factor in causing Ms. Nixon's injury. Accordingly, we reverse the grant of summary judgment as to Mr. Ippolito.

## IV.    Conclusion

For all of the foregoing reasons, we (1) affirm the grant of summary judgment in favor of Mr. Etile; and (2) reverse the grants of summary judgment as to Messrs. Deer and Ippolito and Geico and National General.

*So ordered.*